FILED

JUN 24 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  MARIO JUAREZ
2  66 FRANKLIN STREET, SUITE 300
   OAKLAND, CALIFORNIA 94601
3  mario@mariojuarez.co

4
5              **UNITED STATES OF AMERICA DISTRICT COURT**

6                 **NORTHERN DISTRICT OF CALIFORNIA**

7                         **OAKLAND DIVISION**

8
9  **MARIO JUAREZ, INDIVIDUALLY AND**         Case No.:
   **DOING BUSINESS AS VIVA**
10 **ENTERTAINMENT COMPANY,**                 CV 25-5280 SK

11          **Plaintiff,**                    **PLAINTIFF MARIO JUAREZ**
                                              **INITIAL EXHIBITS LIST**
12 **vs.**

13 **T-MOBILE USA, INC., A DELAWARE**
   **CORPORATION, AND DOES 1–20,**
14
            **Defendant(s)**
15

16 The following exhibits are submitted in support of Plaintiff's Verified Complaint, Ex Parte

17 Motion for Temporary Restraining Order and Order to Show Cause, Memorandum of Points and

18 Authorities, Declaration, and Ex Parte Motion for Judicial Notice, Expedited Discovery, and

19 Preservation of Evidence, filed on June 24, 2025:

20     1.  Exhibit A: T-Mobile's Rejection Communication, dated May 30, 2025, denying

21         Plaintiff's porting request for account 949-864-937 due to an "account hold."

22     2.  Exhibit B: Plaintiff's Payment Offer, dated June 12, 2025, proposing $5,000 upfront and

23         biweekly payments to resolve the disputed $29,265.37 debt.

24 PLAINTIFF MARIO JUAREZ INITIAL EXHIBITS LIST - 1

25
26

1      3.  Exhibit C: T-Mobile's Refusal Email, dated June 17, 2025, from Dawn Miller,

2          demanding full payment of $29,265.37 to port numbers.

3      4.  Exhibit D: Plaintiff's Communications with T-Mobile, from May 28 to June 19, 2025,

4          including emails to over fifteen T-Mobile staff and final notice to legalnotices@t-

5          mobile.com, citing 47 U.S.C. § 251(b)(2) and 47 C.F.R. § 52.35.

6  I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and

7  correct.

8  Executed on June 23, 2025, in Oakland, California.

9  /s/ Mario Juarez
   Mario Juarez, Pro Se

10 66 Franklin Street, Suite 300
   Oakland, CA 94607

11 mario@mariojuarez.co

12

13

14

15

16

17

18

19

20

21

22

23

24 PLAINTIFF MARIO JUAREZ INITIAL EXHIBITS LIST - 2

25

26

# UNITED STATES OF AMERICA DISTRICT COURT - NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

**MARIO JUAREZ, individually and doing business as VIVA ENTERTAINMENT COMPANY,**
**Plaintiff,**
v.
**T-MOBILE USA, INC., a Delaware corporation, and DOES 1–20,**
**Defendants.**

Case No.:

# EXHIBIT INDEX

MARIO JUAREZ
66 FRANKLIN STREET, SUITE 300
OAKLAND, CALIFORNIA 94607
mario@mariojuarez.co

The following index organizes the exhibits submitted in support of Plaintiff's Verified Complaint, Ex Parte Motion for Temporary Restraining Order and Order to Show Cause, Memorandum of Points and Authorities, Declaration, and Ex Parte Motion for Judicial Notice, Expedited Discovery, and Preservation of Evidence, filed on June 24, 2025:

| Tab | Exhibit | Description |

|-----|---------|-------------|
| 1 | A | T-Mobile's Rejection Communication, dated May 30, 2025, denying Plaintiff's porting request for account 949-864-937 due to an "account hold." |

| 2 | B | Plaintiff's Payment Offer, dated June 12, 2025, proposing $5,000 upfront and biweekly payments to resolve the disputed $29,265.37 debt. |

| 3 | C | T-Mobile's Refusal Email, dated June 17, 2025, from Dawn Miller, demanding full payment of $29,265.37 to port numbers. |

| 4 | D | Plaintiff's Communications with T-Mobile, from May 28 to June 19, 2025, including emails to over fifteen T-Mobile staff and final notice to legalnotices@t-mobile.com, citing 47 U.S.C. § 251(b)(2) and 47 C.F.R. § 52.35. |

Date: June 23, 2025

**/s/ Mario Juarez**
Mario Juarez, Pro Se
66 Franklin Street, Suite 300
Oakland, CA 94607
mario@mariojuarez.co

MARIO JUAREZ
V
T MOBILE USA, INC

# **EXHIBIT**

# **A**

EMAIL FROM NEW CARRIER DENIAL OF
PORTING BECAUSE ACCCOUNT ON
HOLD

## Mario Juarez

| | |
|---|---|
| **From:** | Riaz Danekari <riaz@wavestreet.com> |
| **Sent:** | Friday, May 30, 2025 10:06 AM |
| **To:** | Mario Juarez |
| **Subject:** | FW: Port in order MARIO-CELL has been changed to status EXCEPTION |

<strong><span style='color: red;'>CAUTION: EXTERNAL EMAIL</span></strong>

One or more of the telephone numbers on this order is either disconnected or is no longer part of the account with the losing carrier and end user. Only active telephone numbers assigned to end user's can be ported. Please advise the end user to contact their current carrier to resolve. Once resolved, please advise the Bandwidth team for resubmittal.

-----Original Message-----
From: dashboard-updatenotification@bandwidth.com <dashboard-updatenotification@bandwidth.com>
Sent: Friday, May 30, 2025 4:20 AM
To: Riaz Danekari <riaz@wavestreet.com>
Subject: Port in order MARIO-CELL has been changed to status EXCEPTION

<strong><span style='color: red;'>CAUTION: EXTERNAL EMAIL</span></strong>

*** Replies above this line will be appended as notes to the order if applicable ***
*** Please limit replies to 10 lines of text or less ***
port_in: c432e901-abf5-4e21-81bd-d8d3abbd6e15
Status: EXCEPTION
Account: WaveStreet Managed Services, Inc. (5004623) Last Modified Date: Fri May 30 07:19:49 EDT 2025 Order History Entry: 7409: One or more of the telephone numbers on this order is either disconnected or is no longer part of the account with the losing carrier and end user. Only active telephone numbers assigned to end user's can be ported. Please advise the end user to contact their current carrier to resolve. Once resolved, please advise the Bandwidth team for resubmittal.
Link:
https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fapp.bandwidth.com%2fportal%2fr%2fa%2f5004623%2forders%2fportIn%2fc432e901-abf5-4e21-81bd-d8d3abbd6e15&c=E,1,pyyLSIvoeAysV4IP3h-tGow1NkKG4rOvwPNotpFLupCncieFooWYU-7jGcUNpJrRFLk5oUQketcZ1XYbWasOVnUpNtdtVk2PlCfmr7cbKQobA3blVW8EDQ,,&typo=1
Customer Order ID: MARIO-CELL

Telephone Numbers:
2096401111 5106402700 5106417711 5106417733 5107368080
5108216699 5108285806 5109019090 5109447744 5109749696
6199430202 7025159797 7252527788
Vendor Name: Bandwidth CLEC

**Mario Juarez**

---

| | |
|---|---|
| **From:** | Riaz Danekari <riaz@wavestreet.com> |
| **Sent:** | Friday, May 30, 2025 11:55 AM |
| **To:** | Mario Juarez |
| **Subject:** | RE: Port in order MARIO-CELL has been changed to status EXCEPTION |

**CAUTION: EXTERNAL EMAIL**

Ok it's done and resubmitted.

**From:** Mario Juarez <Mario@mariojuarez.co>
**Sent:** Friday, May 30, 2025 11:52 AM
**To:** Riaz Danekari <riaz@wavestreet.com>
**Subject:** Re: Port in order MARIO-CELL has been changed to status EXCEPTION

**CAUTION: EXTERNAL EMAIL**

510-974-9696 it's the number not on the account !



**Mario Juarez**
mario@mariojuarez.com



**Mario Juarez Organization**
Mobile: 510-821-6699
1241 High Street, Oakland California 94601
www.mariojuarez.co

> On May 30, 2025, at 10:06 AM, Riaz Danekari <riaz@wavestreet.com> wrote:
>
> <strong><span style='color: red;'>CAUTION: EXTERNAL EMAIL</span></strong>
>
> One or more of the telephone numbers on this order is either disconnected or is no longer part of the account with the losing carrier and end user. Only active telephone numbers assigned to end user's can be ported. Please advise the end user to contact their current carrier to resolve. Once resolved, please advise the Bandwidth team for resubmittal.

-----Original Message-----
From: dashboard-updatenotification@bandwidth.com <dashboard-updatenotification@bandwidth.com>
Sent: Friday, May 30, 2025 4:20 AM
To: Riaz Danekari <riaz@wavestreet.com>
Subject: Port in order MARIO-CELL has been changed to status EXCEPTION

<strong><span style='color: red;'>CAUTION: EXTERNAL EMAIL</span></strong>

*** Replies above this line will be appended as notes to the order if applicable ***
*** Please limit replies to 10 lines of text or less ***
port_in: c432e901-abf5-4e21-81bd-d8d3abbd6e15
Status: EXCEPTION
Account: WaveStreet Managed Services, Inc. (5004623) Last Modified Date: Fri May 30 07:19:49 EDT 2025 Order History Entry: 7409: One or more of the telephone numbers on this order is either disconnected or is no longer part of the account with the losing carrier and end user. Only active telephone numbers assigned to end user's can be ported. Please advise the end user to contact their current carrier to resolve. Once resolved, please advise the Bandwidth team for resubmittal.
Link:
https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fapp.bandwidth.com%2fportal%2fr%2fa%2f5004623%2forders%2fportIn%2fc432e901-abf5-4e21-81bd-d8d3abbd6e15&c=E,1,pyyLSIvoeAysV4lP3h-tGow1NkKG4rOvwPNotpFLupCncieFooWYU-7jGcUNpJrRFLk5oUQketcZ1XYbWasOVnUpNtdtVk2PlCfmr7cbKQobA3blVW8EDQ,,&typo=1
Customer Order ID: MARIO-CELL

Telephone Numbers:
2096401111 5106402700 5106417711 5106417733 5107368080
5108216699 5108285806 5109019090 5109447744 5109749696
6199430202 7025159797 7252527788
Vendor Name: Bandwidth CLEC

**Mario Juarez**

| | |
|---|---|
| **From:** | Mario Juarez |
| **Sent:** | Wednesday, May 28, 2025 12:48 PM |
| **To:** | Riaz Danekari; Sunil Singh |
| **Subject:** | Porting of cell phones numbers to Wave Street ? |

Riaz and Sunil:

Can you help port the following numbers from T Mobile to you so I can later deploy them to ATT:

Can you help to see if we can transfer the following numbers from T Mobile to Riaz:

Viva Entertainment Company, LLC
1241 High St, Oakland CA 94601
EIN 47-3853196
Pin: 696969
Account # # 949 864 937
Mario Juarez it's the Authorized user
Mario@MarioJuarez.com
The account main line is: 510-944-7744

510-821-6699
510-944-7744
510-836-8080

209-640-1111
702-515-9797
725-252-7788
619-943-0202
510-437-1111
510-532-1111

510-641-7711
510-641-7733

510-909-9090

510-640-2700?
510-828-5806?
510-974-9696?

1



**Mario Juarez**
mario@mariojuarez.com

**Mario Juarez Organization**
Mobile: 510-821-6699
www.mariojuarez.co

MARIO JUAREZ
V
T MOBILE USA, INC

# **<u>EXHIBIT</u>**

# **<u>B</u>**

EMAILS WITH OFFER PROPOSING
PAYMENTS OF $5,0000 UPFRONT AND
BYWEEKLY TO RESOLVE THE DISPUTED
DEBT $29,265.37

**Mario Juarez**

| | |
|---|---|
| **From:** | Mario Juarez |
| **Sent:** | Monday, June 16, 2025 2:00 PM |
| **To:** | Stephanie Barreda; Tom Stephan; Carlos Olvera Escamilla; SF-Michael Hughes; executiverespomse@t-mobile.com; mike.sievert@t-mobile.com |
| **Cc:** | T-MobileforBusinessCollections@t-mobile.com |
| **Subject:** | RE: Important T-Mobile Account Update – ACTION NEEDED to your VIVA ENTERTAINMENT COMPANY LLC, reference account # 949864937. REQUEST FOR LINE RESTORATIONS-- LOGSTANDING BUSINESS CUSTOMER COMMITED TO A REPAYMENT PAN |
| **Attachments:** | Thank you for contacting T-Mobile USA 21415060 |

Mr. Sievers and members of T-Mobile.

I was following up to my email from last week. I hope you all had a relaxing and excellent weekend.

In services yours truly,

Mario



**Mario Juarez**
mario@mariojuarez.CO

**Mario Juarez Organization**
Mobile: 510-821-6699
www.mariojuarez.co
Oakland – Delaware - Las Vegas – Miami Beach – Mexico
City - Tijuana



**From:** Mario Juarez
**Sent:** Friday, June 13, 2025 11:03 AM
**To:** Stephanie Barreda <Stephanie.Barreda5@t-mobile.com>; Tom Stephan <Thomas.Stephan3@t-mobile.com>; Carlos Olvera Escamilla <Carlos.Olvera8@t-mobile.com>; SF-Michael Hughes <Michael.Hughes@t-mobilesupport.com>; executiverespomse@t-mobile.com; mike.sievert@t-mobile.com
**Cc:** T-MobileforBusinessCollections@t-mobile.com
**Subject:** Re: Important T-Mobile Account Update – ACTION NEEDED to your VIVA ENTERTAINMENT COMPANY LLC, reference account # 949864937. REQUEST FOR LINE RESTORATIONS-- LOGSTANDING BUSINESS CUSTOMER COMMITED TO A REPAYMENT PAN

Mr. Sievert:

I sent the above email to the wrong address.

Sorry.

1

Please read below.

Mario



**Mario Juarez**
mario@mariojuarez.com

**Mario Juarez Organization**
Mobile: 510-821-6699
www.mariojuarez.co

On Jun 12, 2025, at 4:41 PM, Mario Juarez <mario@mariojuarez.com> wrote:

Dear Mr. Sievert,

My name is Mario Juarez, and I'm writing to you not only as the CEO of T-Mobile but as someone I hope will understand the kind of fight small business owners face when circumstances turn against us — and the kind of trust it takes to ask for help again.

I've been a T-Mobile business customer for nearly a decade. My companies, my clients, and my team have all relied on your services to operate daily. The shutdown of my business lines — though I understand why it occurred — has made it significantly harder for me to recover financially, because my phone is the bloodline of everything I do.

This isn't the first time I've faced hardship. And in the past, when I reached out, T-Mobile extended support — and in most of those moments, I was able to come through on my commitments. I'll be honest: there was a time I couldn't complete the payment plan. But I always made my best effort. And I've never stopped working to make things right.

2

Today, I'm asking for your help again — not for a handout, but for the opportunity to make good on this obligation with momentum.

1. I have $5,000 available right now and am prepared to pay it today.

2. I'm committing to $5,000 every two weeks until my balance — roughly $28,000 — is fully resolved.

3. I believe that if my lines are restored, I'll be able to accelerate payments even faster — possibly every 10 days — because I'll finally have the tools I need to generate revenue again.

Since my suspension, I've worked through every available option — selling assets, collecting on past debts, negotiating contracts. I even gave my last payment knowing it would leave me overdrawn, because I needed to show my intent was real.

In parallel, I've started auditing unused lines, cutting down my monthly costs, and restructuring how I use T-Mobile's services. I want to be lean, responsible, and long-term.

Mr. Sievert, I'm not proud of how I arrived here — but I am proud of the fight I've put up to stay afloat. I'm reaching out to you with respect, humility, and full commitment. Please authorize the restoration of all my lines, so I can make good on this plan.

I believe in T-Mobile's mission. I believe in the way you've stood by customers like me before. I'm asking you now not to give up on someone who's still trying to make it right — because I believe I still can.

With respect and readiness to pay,

MARIO JUAREZ
V
T MOBILE USA, INC

# **<u>EXHIBIT</u>**
# **<u>C</u>**

EMAILS FROM DAWN MILLER AT T-MOBILE ON 06/17/2025 "ONCE PAYMENT IS SUCCESULLY POSTED, WE CAN RESTORE SERVICE AND PROVIDE PORT-OUT PIN THOSE LINES"

**Mario Juarez**

| | |
|---|---|
| From: | Dawn Miller <dawn.fragnoli@t-mobilesupport.com> |
| Sent: | Tuesday, June 17, 2025 1:18 PM |
| To: | dawn.fragnoli@t-mobile.com |
| Cc: | wirelessporting@t-mobile.com; fccinfo@fcc-fcc.gov; executiveresolutions@t-mobile.com; customercare@t-mobile.com; mike.sievert@t-mobile.com; carlos.olvera8@t-mobile.com; businessteam@t-mobile.com; ceo@t-mobile.com; stephanie.barreda5@t-mobile.com; consumer-afairs@cpuc.ca.gov; michael.hughes@t-mobilesupport.com; thomas.stephan3@t-mobile.com; helpdesk@wavestreet.com; t-mobileforbusinesscollections@t-mobile.com; Mario Juarez; Mario Juarez; mrmariojuarez@gmail.com; Mario Juarez; kenya.calloway@t-mobile.com; amanda.howe@t-mobile.com |
| Subject: | Account 949864937 – Payment Requirement for Service Restoration    [ ref:! 00D800ashm.!500Hu02Nrdtv:ref ] |

**CAUTION: EXTERNAL EMAIL**

Good afternoon Mr. Juarez,

Following up on your canceled account (949864937), we understand the impact this may have on your business. After a thorough review, we're unable to offer an additional payment arrangement at this time.

To resume service, the full balance of $29,265.23, including any applicable restoration fees, must be paid in full.  Once the payment is successfully posted, we can restore service and provide the port-out PIN for those lines.

Please let us know how you wish to proceed.

Very Respectfully,

Dawn Miller
P-Lead, Federal Government
Office Hours Monday-Friday 8am-5pm EST
Direct 470-671-5116 | dawn.fragnoli@t-mobilesupport.com
https://www.t-mobile.com/business | Follow us on Twitter, Facebook and LinkedIn

--------------- Original Message ---------------
**From:** Dawn Miller [dawn.fragnoli@t-mobile.com]
**Sent:** 6/17/2025 12:00 PM
**To:** mario@mariojuarez.com
**Cc:** mario@mariojuarez.net; wirelessporting@t-mobile.com; mario@mariojuarez.com; dawn.fragnoli@t-mobile.com; fccinfo@fcc-fcc.gov; executiveresolutions@t-mobile.com; customercare@t-mobile.com; mike.sievert@t-mobile.com; helpdesk@wavestreet.com; t-mobileforbusinesscollections@t-mobile.com; carlos.olvera8@t-mobile.com; mario@mariojuarez.co; mrmariojuarez@gmail.com; businessteam@t-mobile.com; executiverespomse@t-mobile.com; ceo@t-mobile.com; stephanie.barreda5@t-mobile.com; consumer-afairs@cpuc.ca.gov; michael.hughes@t-

1

mobilesupport.com; thomas.stephan3@t-mobile.com
**Subject:** RE: SUBJECT: FINAL LEGAL DEMAND – Immediate Authorization to Port All Numbers – Account #949-864-937 – Violations of FCC & CPUC Rules [ ref:!00D800ashm.!500Hu02NrZwi:ref ]

Good morning Mr. Juarez,

I am trying to reach you however I do not have a valid phone number for you.  Can you please provide a phone number that I can reach you at to further discuss your account and lines?

Very Respectfully,

Dawn Miller
P-Lead, Federal Government
Office Hours Monday-Friday 8am-5pm EST
Direct 470-671-5116 | dawn.fragnoli@t-mobile.com
https://www.t-mobile.com/business | Follow us on Twitter, Facebook and LinkedIn


--------------- Original Message ---------------
**From:** Mario Juarez [mario@mariojuarez.com]
**Sent:** 6/17/2025 12:34 AM
**To:** wirelessporting@t-mobile.com; fccinfo@fcc-fcc.gov; executiveresolutions@t-mobile.com; customercare@t-mobile.com; mike.sievert@t-mobile.com; carlos.olvera8@t-mobile.com; businessteam@t-mobile.com; executiverespomse@t-mobile.com; ceo@t-mobile.com; stephanie.barreda5@t-mobile.com; consumer-afairs@cpuc.ca.gov; michael.hughes@t-mobilesupport.com; thomas.stephan3@t-mobile.com
**Cc:** helpdesk@wavestreet.com; t-mobileforbusinesscollections@t-mobile.com; mario@mariojuarez.net; mario@mariojuarez.co; mrmariojuarez@gmail.com; mario@mariojuarez.com
**Subject:** SUBJECT: FINAL LEGAL DEMAND – Immediate Authorization to Port All Numbers – Account #949-864-937 – Violations of FCC & CPUC Rules

## ? SUBJECT: FINAL LEGAL DEMAND – Immediate Authorization to Port All Numbers – Account #949-864-937 – Violations of FCC & CPUC Rules

## ??

## Mailing Address for Hard Copy

T-Mobile USA, Inc.

Executive Resolutions / Legal Department

12920 SE 38th Street

Bellevue, WA 98006

Attn: Executive Legal Division / CEO Mike Sievert

From:
Mario Juarez
Authorized Account Holder
Viva Entertainment Company
1241 High Street
Oakland, CA 94601
Email: mariojuarez@gmail.com
EIN: 47-3853196
T-Mobile Account #: 949-864-937
PIN: 696969
Primary Line: 510-944-7744

To Whom It May Concern,

This is a final legal demand for the immediate authorization and release of all phone numbers associated with the above-referenced business account, held by Viva Entertainment Company, for porting to Wave Street Data, my authorized new service provider.

Despite repeated good-faith efforts to resolve this matter and provide all required account information, T-Mobile has unlawfully obstructed the port-out process and denied me access to my business-critical telephone numbers.

## ? PHONE NUMBERS INCLUDED BUT NOT LIMITED TO BE RELEASED:

1. 510-821-6699
2. 510-944-7744
3. 510-736-8080
4. 510-901-9090
5. 209-640-1111
6. 702-515-9797
7. 619-943-0202
8. 510-641-7733
9. 510-641-7711
10. 510-828-5806

…and any other numbers linked to this account.

3

## ?? LEGAL VIOLATIONS – FEDERAL & CALIFORNIA LAW

?

### FCC Regulation – 47 CFR § 52.35

"A provider may not refuse to port a number based on an outstanding balance, account suspension, or contract dispute. Porting must proceed once the customer is properly verified."

You are explicitly prohibited under federal law from denying my ability to port numbers due to a $28,000 balance or suspension status.

?

### FCC Declaratory Ruling DA 07-244 (2007)

"Refusal to port a number due to unpaid bills or other conditions is unlawful and subject to enforcement. Porting rights are not conditional on account standing."

Your denial violates both the spirit and letter of FCC portability rules and exposes you to federal enforcement action.

?

### California Public Utilities Commission Decision D.07-09-019

"California adopts FCC porting rules in full. Carriers cannot use account delinquency or suspension to deny a valid port request."

This is binding in California and directly applies to wireless carriers operating in the state.

?

### California Public Utilities Code § 710

"No provider… shall interfere with or block a consumer's ability to port his or her telephone number to another provider."

Your obstruction is a clear statutory violation.

?

### California PU Code § 2890(c)

"A telephone corporation shall not make any change in a subscriber's provider choice without express authorization."

I provided authorization. You are not legally allowed to override it.


?

**California Civil Code § 1770 (CLRA)**

"Misrepresenting a consumer's legal rights or remedies" is a prohibited and actionable business practice.


Telling me I cannot port my numbers without paying in full is a misrepresentation of my legal rights.

?

**California Business & Professions Code § 17200 (UCL)**

Prohibits unlawful, unfair, or fraudulent business acts.
Denying phone number portability as leverage to collect a debt is an unfair practice, especially when payment arrangements have been proposed and ignored.


**? TIMELINE OF DOCUMENTED ATTEMPTS**

1. May 28 & June 2, 2025: Port-out requests submitted by Wave Street Data, denied by T-Mobile.

2. June 12, 2025: I sent a detailed email to CEO Mike Sievert and your Executive Team offering a $5,000 immediate payment and $5,000 biweekly as a resolution.

3. June 14 & June 16, 2025: Follow-up emails were sent to five T-Mobile executive and collections contacts.

4. No response received.

5. Phone call with T-Mobile Business Resolution: I was informed that no numbers would be released unless the full balance was paid.

This constitutes a documented pattern of non-response, legal obstruction, and unfair business practice.


**? BUSINESS HARM SUFFERED**

Your refusal to port out my business numbers has:

1. Crippled communications with long-standing clients
2. Resulted in loss of contracts and revenue
3. Created reputational damage
4. Prevented me from conducting lawful business activities in California

Several of these numbers have been in use for over 20 years and are widely published as part of government, corporate, and vendor contact records.

## ?? LEGAL RETALIATION DISCLAIMER

Let me be clear:

I am not refusing to pay the debt. I made multiple written payment proposals and attempted to resolve this in good faith. You refused to respond.

If T-Mobile attempts to sue me, initiate collections, or take retaliatory legal action without first complying with federal and state law regarding number portability, I will:

1. File a counterclaim for damages and business loss
2. Seek injunctive relief for unlawful interference
3. Pursue attorney's fees, regulatory penalties, and statutory damages
4. Report your conduct to consumer protection media, state regulators, and industry watchdogs

This letter does not waive any legal rights or remedies, and serves as final notice and opportunity to comply.

## ? DEMAND FOR ACTION – DEADLINE 24 HOURS

You are hereby given 24 hours from receipt of this email and letter to:

1. Authorize and release all phone numbers associated with the account for immediate porting to Wave Street Data

2. Provide written confirmation that no further delays or blocks will be imposed based on balance or account status

ᵀf you do not comply, I will file:

1. An FCC complaint under 47 CFR § 52.35

2. A CPUC complaint citing CPUC D.07-09-019, PU Code §§ 710 & 2890

3. A California Attorney General complaint for violations of CLRA and UCL

4. A civil action in court seeking economic damages, public injunction, and statutory penalties

Respectfully,

Mario Juarez

Viva Entertainment Company

mariojuarez@gmail.com

510-944-7744

---

**From:** Mario Juarez
**Sent:** Monday, June 16, 2025 2:00 PM
**To:** Stephanie Barreda <Stephanie.Barreda5@t-mobile.com>; Tom Stephan <Thomas.Stephan3@t-mobile.com>; Carlos Olvera Escamilla <Carlos.Olvera8@t-mobile.com>; SF-Michael Hughes <Michael.Hughes@t-mobilesupport.com>; executiverespomse@t-mobile.com; mike.sievert@t-mobile.com
**Cc:** T-MobileforBusinessCollections@t-mobile.com
**Subject:** RE: Important T-Mobile Account Update – ACTION NEEDED to your VIVA ENTERTAINMENT COMPANY LLC, reference account # 949864937. REQUEST FOR LINE RESTORATIONS-- LOGSTANDING BUSINESS CUSTOMER COMMITED TO A REPAYMENT PAN

Mr. Sievers and members of T-Mobile.

I was following up to my email from last week. I hope you all had a relaxing and excellent weekend.

In services yours truly,

Mario



**Mario Juarez**
mario@mariojuarez.CO

**Mario Juarez Organization**
Mobile: 510-821-6699
www.mariojuarez.co

Oakland – Delaware - Las Vegas – Miami Beach – Mexico City - Tijuana

MARIO JUAREZ
V
T MOBILE USA, INC

# **<u>EXHIBIT</u>**

# **<u>D</u>**

EMAILS BETWEEN T-MOBILE AND
MARIO JUAREZ

**Mario Juarez**

| | |
|---|---|
| **From:** | Mario Juarez |
| **Sent:** | Tuesday, June 17, 2025 4:25 PM |
| **To:** | Mario Juarez |
| **Cc:** | Dawn Miller; dawn.fragnoli@t-mobile.com; wirelessporting@t-mobile.com; FCCINFO@fcc-fcc.gov; ExecutiveResolutions@t-mobile.com; customercare@t-mobile.com; mike.sievert@t-mobile.com; carlos.olvera8@t-mobile.com; BUSINESSTEAM@t-mobile.com; ceo@t-mobile.com; stephanie.barreda5@t-mobile.com; CONSUMER-AFAIRS@cpuc.ca.gov; michael.hughes@t-mobilesupport.com; thomas.stephan3@t-mobile.com; helpdesk@wavestreet.com; T-MobileforBusinessCollections@t-mobile.com; mrmariojuarez@gmail.com; Mario Juarez; kenya.calloway@t-mobile.com; amanda.howe@t-mobile.com; Lerinbound@t-mobile.com; T-MobileCompliance@t-mobile.com; mike.sievert@t-mobile.com; T-MobileCompliance@t-mobile.com; governmentaffairs@t-mobile.com; susan.pedersen-lipper@t-mobile.com; communications@cpuc.ca.gov |
| **Subject:** | Re: Account 949864937 – Payment Requirement for Service Restoration    [ ref:! 00D800ashm.!500Hu02Nrdtv:ref ] |

Dear T-Mobile Legal and Executive Teams,

This is a final legal demand issued on behalf of my self and Viva Entertainment Company, my independently operated company. Your refusal to allow the porting of our active business numbers based on an unpaid balance violates multiple provisions of federal telecommunications law, California consumer protection statutes, and established CPUC regulatory policy.

I am writing to demand immediate compliance with your legal obligation to release all requested numbers for porting — regardless of any outstanding balance — as mandated under the following:



## I. Summary of Legal Violations

1. Violation of FCC Rule – 47 C.F.R. § 52.35

FCC regulations prohibit denial of number portability based on unpaid balances. You are legally obligated to port all numbers upon receipt of a valid request. The FCC has stated unequivocally:

> "A company can't refuse to port your number even if you have an outstanding balance or unpaid termination fees." – FCC Consumer Guide, 2021

### 2. Interference with Communications Act Rights – 47 U.S.C. §§ 201, 206, 207

Your refusal violates Sections 201 and 251(b)(2) of the Communications Act. The porting process is protected by federal law, and we reserve the right to pursue damages and injunctive relief in federal court under 47 U.S.C. § 207.

### 3. CPUC General Order 168 and D.07-09-019

California regulations also affirm consumers' right to retain their phone numbers when switching providers. T-Mobile's conduct violates California Public Utilities Code §§ 451 and 2890(d), which forbid unjust practices and the use of disconnection as coercion in a billing dispute.

### 4. Violation of California's Unfair Competition Law (BPC § 17200)

Blocking the port to force payment is both unlawful (due to violations of FCC and CPUC rules) and unfair, as it undermines public policy and causes irreparable business harm.

### 5. Violation of California's Consumers Legal Remedies Act (CLRA, Civil Code § 1770)

T-Mobile misrepresented our legal rights by stating the company must pay in full to retain its numbers — a right that federal law guarantees. Any contract clause or internal policy to that effect is void as unconscionable under CLRA § 1770(a)(19).



## II. Facts for the Record

- Viva Entertainment Company has maintained these phone numbers for years and uses them for all customer-facing business operations.

- On [insert date], we attempted to port our numbers to a new carrier. T-Mobile refused.

- We made a good-faith attempt to arrange a payment plan — which was explicitly rejected.

- Despite this, we were told that the numbers would only be released upon full payment of ~$28,000, in violation of FCC regulations.

- These numbers have not been disconnected or recycled, and the accounts remain under your control. You continue to withhold them in bad faith.



## III. Final Demand

You are hereby instructed to:

1. Immediately authorize port-out of all requested numbers without further delay.

2. Cease and desist from all attempts to condition number release on full payment, which is legally impermissible.

3. Confirm in writing that the numbers will not be disconnected, recycled, or reassigned pending resolution.

4. Comply with the porting requirements set forth in FCC 47 CFR § 52.35 within one (1) business day of receiving this notice.

If you fail to comply, we will file for:

3

- Temporary Restraining Order and Injunctive Relief in state or federal court
- Complaint to the FCC Enforcement Bureau
- Regulatory notice to the CPUC and California Attorney General
- Legal action under the Communications Act, CLRA, and UCL
- Damages for loss of business, goodwill, and communications infrastructure, plus attorney's fees



## IV. Legal Authority

The full legal analysis of your violations under federal and California law — including FCC precedent, CPUC rulings, case law, and relevant California statutes — is provided below for your review and future litigation preparation.

## Memorandum: Enforcing Mario Juarez and Viva Entertainment's Right to Port Phone Numbers

## Introduction & Issue Summary

Viva Entertainment Company (a sole proprietorship of Mario Juarez) seeks to port out its telephone numbers from T-Mobile to a new provider despite an outstanding balance (~$29,000). T-Mobile has refused to release the numbers until the balance is paid in full. This memo analyzes federal law and California law supporting Viva's right to port its numbers immediately, regardless of the debt, and outlines legal strategies (including injunctive relief) to preserve these numbers. Key points addressed:

- Federal FCC Rules: Local Number Portability (LNP) obligations under the Telecommunications Act and FCC regulations (e.g. 47 CFR §52.34 and §52.35). These require carriers to port numbers upon request and prohibit refusing a port due to unpaid fees or termination charges .

- California Public Utilities Code & CPUC Decisions: State provisions (e.g. PU Code §§451, 710, 2890 and CPUC Decision 07-09-019/General Order 168) that reinforce consumers' rights to change carriers without losing their number and limit carriers' leverage over essential phone service.

- Consumer Protection Laws: California's Consumer Legal Remedies Act (CLRA) and Unfair Competition Law (UCL), which can be invoked to challenge T-Mobile's conduct as unlawful, unfair, or deceptive (for example, misrepresenting legal rights or imposing unconscionable terms) . Potential Attorney General enforcement or guidance in analogous contexts is noted.

- Sole Proprietor Status: Discussion of whether a business account (sole proprietorship) diminishes any porting rights or consumer law protections, concluding that T-Mobile has no valid exemption allowing it to withhold number porting for business lines under these laws. If anything, sole proprietorship means Mario Juarez is the consumer contracting party, which may bolster certain consumer-law arguments.

- Injunctive Relief to Protect Numbers: Legal justification to seek an immediate court order ensuring the numbers are ported or at least not reassigned ("recycled") during the dispute. This includes demonstrating irreparable harm if the numbers (vital to my business continuity and goodwill) were lost, especially given carriers' number "aging" policies (as little as 45 days before reassigning a disconnected number) . We also note that my attempt to negotiate a payment plan (rejected by T-Mobile) does not waive its legal rights to port the numbers.

## Federal Law: FCC Rules Guaranteeing Number Portability

Local Number Portability (LNP) Mandate: Under the federal Telecommunications Act, all telecom carriers have a duty to provide number portability. Section 251(b)(2) of 47 U.S.C. requires carriers to enable users to "retain… existing telephone numbers… when switching from one telecommunications carrier to another" (local service area and

technically feasible). The FCC's rules implement this: for example, 47 C.F.R. §52.34 obligates all providers (including wireless and VoIP) to "facilitate" valid port-out requests without unreasonable delay or procedures that would delay/deny the port . In practice, this means once a customer requests a number transfer and provides the necessary account info/PIN, the current carrier must cooperate and release the number.

No Conditioning Porting on Payment: Crucially, FCC policy forbids carriers from blocking or delaying a port-out because a customer owes money. The FCC has explicitly stated that outstanding balances or termination fees are not valid reasons to refuse a port . In other words, "a company can't refuse to port your number even if you have an outstanding balance or unpaid termination fees" . The customer remains responsible for legitimate charges or early termination fees per their contract, but those debts must be collected separately – they cannot be used as leverage to hold the phone number hostage . T-Mobile can bill or even sue for the $29k, but it may not tie number release to debt payment. Any such policy undermines the very purpose of number portability, which is to promote competition and consumer choice. The FCC's guidance to consumers (as far back as the 2003 number portability rollout) was clear: "Carriers are not allowed to refuse to transfer a number because a fee or outstanding balance has not been paid."

FCC Porting Interval Rules: In addition, FCC regulations set strict timeframes for completing ports. Under 47 C.F.R. §52.35, a "simple" port (single line, no complex features) must be completed within one business day of a valid request . Even more complex ports (multiple lines or lines with special services) generally must be done within 4 business days . Carriers can no longer drag their feet; the default expectation is a seamless, prompt transfer. T-Mobile's outright refusal to port (lasting far beyond 1–4 days) flagrantly violates these FCC porting interval rules.

FCC Enforcement Example: The FCC has enforced these principles in the past. In FCC Enforcement Bureau File No. EB-08-IH-0728, an Ohio carrier (Communication Options, Inc.) was investigated for allegedly refusing to port a customer's number due to a billing dispute. The result was a Consent Decree where the FCC reaffirmed that while a provider may contact the customer about paying their debt or inform them of contract consequences, *"in the process of doing so [the provider] may not refuse to port a customer's number." . The carrier under investigation had to implement compliance measures, underscoring that refusal to port because of a balance due is a violation of federal law. This FCC action (and others like it) gives my strong support: T-Mobile's behavior is not only wrong, it could subject T-Mobile to FCC sanctions for violating LNP rules. Vivas can cite this federal authority to any court or agency as evidence that the law is on its side for immediate number release.

No Business-Account Exemption in Federal Law: T-Mobile cannot claim that the rules are different for business accounts. The FCC's number portability mandates apply to all "telecommunications carriers" and all customers – there is no carve-out saying a carrier may withhold a business's numbers pending payment. In fact, the FCC's definition of "customer" or "end-user" for porting includes businesses, and FCC orders have addressed both residential and business situations (e.g., the Consent Decree above involved a business customer). All carriers, including for wireless service, must port numbers upon request regardless of account type. The only distinction is that extremely large ports (many numbers at once) or complex enterprise arrangements might be "non-simple" ports that take a few extra days to coordinate. But nowhere does FCC policy allow a blanket denial of porting for non-payment – that would contravene the pro-competition mandate.

Supporting FCC Authority:

- FCC Guide on Porting (2003): Customers have a right to keep their number when switching carriers; carriers cannot condition porting on paying off disputes or fees .

- 47 C.F.R. §52.34: Carriers must facilitate port-outs "without unreasonable delay or unreasonable procedures" – implying that demanding full payment first is an "unreasonable procedure" effectively denying porting .

- 47 C.F.R. §52.35: Requires 1-day port completion for simple ports , reflecting the FCC's expectation of no delay.

- FCC Consent Decree with COI (2012): Confirmed it's unlawful to refuse a port due to a billing dispute; carriers may remind customers of payment obligations but "may not refuse to port" during that process .

In sum, federal law strongly supports my position. T-Mobile's refusal to release the numbers until the $29k is paid is likely a violation of FCC rules. I can file a complaint with the FCC Enforcement Bureau or reference these rules in court to bolster a claim that T-Mobile is acting unlawfully under federal telecommunications law.

## California Law: Public Utilities Code & CPUC Consumer Protections

California's state laws and regulatory decisions provide additional support for my right to retain its numbers. While wireless carriers like T-Mobile are primarily governed by

federal law, California has asserted consumer protection policies (consistent with federal law) that bolster Biba's claims:

PUC §451 – Just and Reasonable Requirement:  California Public Utilities Code §451 is a broad provision requiring that every public utility's charges and "every unjust or unreasonable charge, practice, and service" is unlawful. Refusing number porting as a coercive tactic for bill collection can be framed as an unreasonable and unjust practice. In a 2020 CPUC complaint case (Utility Telecom Group (UTG) v. Bandwidth, involving refusal to port numbers), the complainant alleged violation of §451 among other rules . The principle is that a carrier must conduct its operations reasonably – holding a phone number hostage to force payment is arguably unreasonable, especially when it contradicts federal mandates. Thus, T-Mobile's behavior may violate §451's standards of fair dealing and adequate service.

PUC §710 – Limitation on State Regulation of VoIP/Wireless: PUC §710 (enacted via SB 1161 (2012), extended by AB 1366) generally prohibits the CPUC from regulating VoIP and other IP-enabled services, which includes much of wireless service, except as required or allowed by federal law. T-Mobile might argue that because Vivas service is a wireless (or possibly VoIP-based) service, the CPUC's direct jurisdiction is limited. However, §710 does not exempt T-Mobile from federal LNP obligations – in fact, it explicitly says the CPUC cannot impose additional rules beyond federal ones in areas like number portability. The CPUC can still enforce federal standards or address consumer complaints in some cases (and it retains authority for things like rights-of-way and emergency services). Notably, §710 preserves the CPUC's authority where federal law delegates it or for certain consumer protection rules in place before 2012. CPUC Decision 07-09-019 (cited in the question) and General Order 168 set forth telecom consumer protection rules prior to §710, which should remain applicable.

It's worth noting that §710 has created a regulatory gap: the CPUC often cannot directly adjudicate wireless consumer disputes . However, this does not give T-Mobile a free pass. It simply means my company might enforce its rights via the courts (using state/federal laws) or through the FCC, rather than a CPUC complaint process. Indeed, §710(a) contains an exception allowing actions "pursuant to the Commission's enforcement of standards or requirements established by federal law," which arguably covers local number portability. In short, PUC §710 does not excuse T-Mobile from complying with number porting rules; it merely shapes the forum for enforcement. California law still expects carriers to follow federal law and consumers have recourse under state general laws (like contract or unfair competition law) even if the CPUC can't directly fine T-Mobile due to §710.

PUC §2890 – Restrictions on Telephone Billing and Disconnection: Section 2890 is primarily known for anti-"cramming" provisions (requiring subscriber authorization for charges on a phone bill). It also contains §2890(d), which limits when telephone service can be disconnected for nonpayment. Specifically, **§2890(d) prohibits disconnecting local telephone service for nonpayment of any charges other than basic local/toll charges that the Commission has authorized for disconnection. In essence, a carrier can only cut off your dial tone for failure to pay core telephone services (and even then, only if regulations permit it); they cannot cut service for unrelated charges or unauthorized fees.

While §2890 was written with traditional landline service in mind, it embodies a policy against using essential phone service as leverage to collect other debts. By analogy, T-Mobile's refusal to release my number is akin to an unjust disconnection: they are effectively denying me the use of its established phone number (an essential service for reaching customers) because of a billing dispute that could be settled separately. If any portion of the $28k debt is for equipment, data services, or other non-telephone charges, disconnection on that basis would clearly violate §2890(d)'s spirit. Even if it's for service charges, carriers historically could not deny number transfer or local service while a good-faith dispute was ongoing. The CPUC recognized that allowing disconnection for disputed charges can foster abusive practices, and noted that leveraging disconnection to compel payment is anti-competitive and harms consumers .

Thus, we can argue that T-Mobile's porting blockade contravenes California's public policy (as reflected in §2890(d) and related decisions) of preserving customers' access to service pending resolution of billing issues. In other words, even if CPUC can't directly fine T-Mobile due to §710, a court applying California law could find this practice "unlawful" or "unfair" by borrowing the standards of §2890(d). Indeed, the CPUC's own General Order (GO) 168 declares: "Consumers have the right to change voice service providers within the same local area and keep the same phone number in accordance with FCC regulations regarding Local Number Portability." . T-Mobile is violating that stated right.

CPUC Decision 07-09-019 and GO 168: D.07-09-019 was a 2007 CPUC decision adopting the Telecommunications Consumer Protection Initiative rules (updating earlier GO 168 rules). It imposed industry-wide consumer protection requirements even on carriers with detariffed or deregulated services. One requirement (as quoted above) is the right to port numbers pursuant to FCC LNP rules. So, under California's framework, T-Mobile is expected to honor port-out requests promptly. GO 168 also includes rules on

disconnection notices, billing disputes, and payment arrangements that emphasize giving consumers opportunities to pay without losing service.

While enforcement of these CPUC-specific rules against wireless carriers has been complicated by PUC §710, they still reflect California's regulatory stance. Biba can cite them as evidence of California public policy: the state explicitly aligns with the FCC in forbidding carriers from denying number porting. In fact, in the UTG v. Bandwidth case at the CPUC, the complaint alleged that refusing to port numbers on request violated GO 168's consumer rights, and sought immediate porting plus fines . This illustrates that, at least in California, refusal to port is viewed as a serious offense against consumer rights and fair competition.

Summary of California Provisions Supporting my rights:

- PU Code §451: Unreasonable practices (like withholding number porting contrary to law) are unlawful .

- PU Code §710: Does not exempt compliance with federal porting rules; it mainly limits CPUC's direct involvement, but the right to port remains protected by "federal law" which carriers must follow .

- PU Code §2890(d): Prohibits using service disconnection to enforce non-telecom charges; by extension, using number retention to enforce payment is against California's policy .

- CPUC Decision 07-09-019 / GO 168: Establish that California consumers (including small businesses) have the right to keep their number when changing providers, per FCC rules . T-Mobile's conduct violates these acknowledged rights.

- General Duty of Fair Dealing: Even aside from telecom-specific laws, T-Mobile's action could be seen as a form of economic duress or coercion, potentially actionable under general contract law (withholding something of yours to force payment). California law disfavors such self-help measures, especially when contrary to statute.

Bottom line: California law aligns with federal law in assuring Biba's right to port-out. T-Mobile cannot find shelter in any California statute or CPUC rule that allows denial of porting for debt collection – none exists. If anything, California's statutes and decisions

give Viva additional causes of action (like under the Unfair Competition Law, discussed next) to seek relief.

## Consumer Protection Claims: CLRA §1770 and BPC §17200

Viva (as a sole operator company) may also have recourse under California's consumer protection statutes, particularly:

- Consumers Legal Remedies Act (CLRA), Civil Code §1750 et seq.
- Unfair Competition Law (UCL), Business & Professions Code §17200 et seq.

These laws apply broadly to unlawful or unfair business practices and could be used to sue T-Mobile in state court for injunctive relief and possibly damages (if applicable).

CLRA – Misrepresentations and Unconscionable Terms: The CLRA prohibits specific unfair or deceptive acts in transactions for goods or services intended for personal, family, or household use. If my phone lines were used at least in part for personal/household purposes, Mario Juarez (as an individual) might qualify as a "consumer" under the CLRA. Even if primarily for business, courts sometimes allow CLRA claims by sole proprietors if the purchase has a personal element or the plaintiff is a natural person (this could be a gray area, but worth considering). Key CLRA provisions that fit this scenario include:

- Civil Code §1770(a)(14): "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." T-Mobile arguably did this by insisting Biba has an obligation to pay in full to keep its numbers, or implying that T-Mobile has a right to deny porting. In reality, that obligation/right is "prohibited by law" – the law says the number must be portable regardless of payment status. Thus, T-Mobile's communication or contract stance is a misrepresentation of Biba's rights. For example, if any T-Mobile contract clause purports to let them refuse number transfer until debts are paid, that clause misstates the law and could violate §1770(a)(14).

11

- Civil Code §1770(a)(19): "Inserting an unconscionable provision in the contract." If T-Mobile's service agreement with me contains terms that effectively forfeit my right to its number or allow termination of service and number loss upon any balance due (far in excess of any reasonable penalty), that could be seen as unconscionable. Phone numbers are unique and essential; a contract that lets T-Mobile retain them as collateral for debt is oppressive and surprises the consumer given the strong public policy favoring portability. I can argue that any such term is void and its enforcement is a CLRA violation. Even absent an explicit contract clause, T-Mobile's behavior in practice is unconscionable – they're using unequal bargaining power to bully a small business by threatening irreversible loss of phone numbers (a term no reasonable consumer would knowingly assent to, especially since the law promises otherwise).

Violations of the CLRA allow for actual damages, injunctive relief, and possibly punitive damages or attorney fees. Importantly, the CLRA allows injunctive relief to stop unlawful acts, and a CLRA demand letter could be sent to T-Mobile putting them on notice. (Because Biba mainly seeks to enforce a right and not primarily damages, a CLRA claim could be a strong tool.)

UCL – Unlawful and Unfair Practices: The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Here, T-Mobile's porting refusal can be characterized as both unlawful and unfair:

- "Unlawful": The UCL borrows other laws' violations as a basis for liability. T-Mobile's violation of federal communications law (FCC porting rules) and California PUC statutes (as discussed) can each serve as the "unlawful" predicate for a UCL claim. Even if those laws don't provide a direct private lawsuit route, UCL allows me or my company to sue and say: this conduct violates FCC regulations/PUC §2890/CLRA, etc., so it's unlawful under §17200. The court can then issue relief (typically injunctive) to remedy the unlawful practice. For instance, a UCL claim could be based on "violating 47 C.F.R. §52.35 and Public Utilities Code §§451/2890, by refusing to port telephone numbers upon request", which is unlawful. The Attorney General or local prosecutors could also enforce such a claim on the public's behalf (the AG has enforced UCL in telecom contexts before, such as cramming or privacy violations, so they could view this as an unfair competition issue harming small businesses).

- "Unfair": Even if a technical law were not on point, the UCL's "unfair" prong forbids business practices that offend established public policy or are immoral, unethical, oppressive, or substantially injurious to consumers. T-Mobile's conduct meets this test. It offends the public policy of facilitating customer choice and number portability (articulated in the FCC rules and CPUC GO 168). It is oppressive and injurious because my company stands to lose customer contact, business reputation, and the benefit of its phone number listings built over time. The harm to my companies (and consumer interest in competition) outweighs any "reason" T-Mobile may have, especially since T-Mobile has other lawful means to collect its debt. Courts have found "unfair" practices in similar contexts where a company exploits leverage to the detriment of consumers' economic interests. Here, cutting off a business's phone access or number is an extreme form of leverage.

Under the UCL, injunctive relief and restitution are available. I could seek an injunction requiring T-Mobile to immediately release and port the numbers and barring any further withholding. Biba can also seek any economic losses caused by the delay (e.g. lost profits from being unreachable, if provable) as restitution. Notably, UCL actions don't require proving intent or willfulness – the fact of the practice and its unfair nature suffice.

Attorney General Guidance/Precedent: While we did not find a California AG case specifically on number porting, the AG has a track record of enforcing consumer protection in telecommunications (e.g. suing carriers for "cramming" unauthorized charges, or for privacy violations). The AG could view T-Mobile's refusal as an unfair business practice that harms both competition and consumers, possibly violating Business & Professions Code §17000 (if seen as anti-competitive) or fitting within UCL as described. At a minimum, the California AG's Office provides consumer guidance that if a carrier is uncooperative, consumers should complain to regulators – indicating such issues are within their purview. Also, other states' AGs and consumer advocates have intervened in number-portability issues. For instance, the New York Attorney General in the early 2000s took interest in ensuring carriers complied with number porting rules when wireless LNP was introduced. This broader context means T-Mobile faces potential regulatory and reputational risk for this practice.

My companies can leverage these consumer protection angles by, for example, sending a copy of any complaint to the AG's Public Inquiry Unit or referencing the possibility of AG enforcement in negotiations. The prospect of a UCL action (which can lead to civil penalties and class actions) may push T-Mobile to relent.

13

Sole Proprietorship and Consumer Law Applicability: Because my company is a sole operator , Mario Juarez is essentially the customer on the account (not a separate legal "business entity"). Many consumer protection laws, like the CLRA, require the plaintiff to be an individual who acquired goods/services for personal or small group use. While Viva use is commercial in nature, the lines between personal and business use can blur for a sole proprietor. For example, if Mario Juarez signed up for service under his own name and the lines were used for both business and personal contacts, he could be treated as a consumer. Even if not, the UCL has no such limitation – any "person" (including businesses) can sue under §17200 if they lost money or property due to unfair competition. Here, losing access to phone numbers and potentially losing customers or having to spend money on workarounds would qualify as an economic injury for UCL standing.

In essence, being a sole proprietorship does not reduce the protections – it arguably increases flexibility in invoking consumer statutes. Courts are often sympathetic when a small, individually-run business is bullied by a large corporation over essential services, viewing it similarly to an individual consumer. So T-Mobile cannot dismiss Biba's rights by saying "this was a business account, not subject to consumer laws." Many of these protections still apply or can be adapted to Biba's situation.

## Injunctive Relief: Preserving Numbers and Preventing Reassignment

Given the urgency and importance of keeping my phone numbers active, seeking injunctive relief is a top priority. An injunction (temporary restraining order or preliminary injunction in court) can ensure the numbers are not lost while litigation over the balance or the porting rights proceeds. Here's why injunctive relief is justified and how to pursue it:

Irreparable Harm: My company must show that without an injunction, it will suffer harm that cannot be fully remedied by money damages later. Losing phone numbers satisfies this criterion. These numbers are tied to my identity and client contacts developed over years. If they are disconnected and eventually reassigned to someone else, my comoany cannot get the same numbers back – that loss is permanent. Even a short lapse in retaining the number can cause customer confusion, loss of business, missed

14

opportunities, and reputational damage that are hard to quantify. Courts have recognized that harm to goodwill and customer relationships is irreparable, as is the loss of a unique irreplaceable asset. A phone number, much like a trademark or domain name, is a unique identifier; if it's gone, no amount of money truly replaces it (especially for a small entertainment company whose clients rely on that contact).

Additionally, public interest and balance of hardships favor an injunction: granting it simply forces T-Mobile to do what the law already requires (port the number) and preserves the status quo of my company having its number; denying it would effectively reward T-Mobile for non-compliance and might put Biba out of business. Since I and my company is willing to continue paying or escrowing current charges moving forward, T-Mobile cannot claim much hardship from an injunction except loss of leverage.

Preventing "Recycling" of Numbers: Carriers like T-Mobile "age" disconnected numbers for a short period and then reassign them to new customers. The FCC has rules on this: a minimum 45-day aging period is required for any permanently disconnected number , and for numbers formerly used by business customers, the aging can extend up to 365 days (but not less than 45) . This means if Biba's lines are disconnected, T-Mobile could, after 45 days, reassign those numbers (though they might choose to hold them a bit longer for business numbers). Once reassigned, the numbers are gone forever – my company would have no way to reclaim them from the new subscribers. Thus, time is of the essence. An injunction can either (a) compel T-Mobile to immediately port the numbers to my company new carrier (the optimal solution), or at least (b) prohibit T-Mobile from deactivating or reassigning the numbers during the pendency of the dispute (preserving them until final judgment).

Courts have issued such orders in analogous situations. In the UTG v. Bandwidth case, UTG sought an interim CPUC order for immediate porting; simultaneously, a federal court overseeing related litigation issued a subpoena or order requiring the defendant carrier to preserve the phone numbers at issue . This demonstrates that judges understand the need to maintain number integrity pending resolution. Biba can petition the court for a TRO (Temporary Restraining Order) on an emergency basis, showing that each day without the port risks permanent loss of the numbers (once the aging period expires or if T-Mobile were to disconnect service). The TRO can instruct T-Mobile to not disconnect service or not assign the numbers elsewhere, and ideally to honor the port-out request forthwith.

Legal Basis for Injunction: my claims under federal law (e.g., seeking an injunction under the Telecommunications Act or FCC rules) and state law (CLRA, UCL) all support injunctive relief. For instance, UCL explicitly authorizes courts to issue injunctions to stop unfair business practices (no need to show traditional equitable factors if the statute's standard is met, though Biba meets them regardless). Under federal law, Biba might also invoke 47 U.S.C. §207, which allows individuals to bring actions for violations of the Communications Act in federal court – an injunction to enforce number portability could be a remedy there. Furthermore, Biba can argue it is entitled to specific performance of the contract insofar as T-Mobile promised to comply with law (which includes letting the number be ported). Telephone numbers may not be "owned" by the customer in a property sense, but the right to port is a specific entitlement that equity can enforce.

Practical Considerations: To get a TRO quickly, my company should gather evidence such as: proof of its ownership/use of the numbers (phone bills, advertisements showing the number, etc.), evidence of T-Mobile's refusal (emails or letters from T-Mobile stating "we won't release it until paid"), and a statement of attempts to resolve (like the fact that I attempted to arrange a payment plan in good faith, which T-Mobile rejected). Presenting that my company tried to pay something or negotiate, and T-Mobile still refused, will make the court see that my company isn't simply avoiding payment – it's trying to protect its business while addressing the debt reasonably. This also undercuts any argument by T-Mobile that my company has "unclean hands."

I should emphasize that granting the injunction does not eliminate the debt – I acknowledges the outstanding balance and will deal with it through legal channels or settlement. The injunction would simply decouple the phone number from the debt, as the law intends. Courts are more inclined to enforce a right when the moving party is acting fairly (here, I offered a payment arrangement, signifying responsibility). We should clearly note in our filings: my offer of a payment plan and T-Mobile's refusal to accept it do not constitute a waiver of My rights. Under Evidence Code provisions and public policy, settlement communications are inadmissible to prove liability or invalidity of a claim. So T-Mobile cannot use the fact that I offered to pay over time as evidence that I conceded T-Mobile's right to hold the numbers. If anything, it shows I am mitigation efforts. We will assert that I expressly reserves its right to demand number porting despite any partial payment discussions – there was no agreement to relinquish that right.

Thus, an injunction is both warranted and likely obtainable. Action plan: immediately draft a verified complaint and application for TRO/preliminary injunction to file in superior court (or federal court if using federal law claims), include the causes of action

(FCC rule violation via UCL, CLRA violations, etc.), and serve T-Mobile. Often, just the filing or a stern demand letter attaching a draft complaint can prompt T-Mobile's legal department to capitulate and allow the port to avoid an adverse court ruling or public enforcement.

## Conclusion and Strategy Recommendations

In light of the above analysis, Viva Entertainment Co. and I personally has a strong legal right to port its phone numbers away from T-Mobile despite the outstanding balance. T-Mobile's refusal is unsupported by law and exposes it to liability. We recommend the following strategic steps:

1. Gather Evidence and Document Requests: Compile all relevant documents: contracts with T-Mobile, bills showing the number, correspondence where T-Mobile conditioned porting on payment. Document the attempted payment arrangement and its rejection (while clarifying this was a good-faith effort, not an agreement to forgo rights).

2. Send a Legal Demand Letter: Immediately send T-Mobile a written demand (via counsel) citing the FCC rules and California law outlined above. Reference 47 C.F.R. §52.35's one-day rule and the FCC's own words that carriers cannot refuse a port for unpaid fees . Cite CPUC GO 168's statement of my company right to keep its number . Demand that T-Mobile release the numbers for porting by a short deadline. Inform them that if they do not comply, i will file for injunctive relief and will include claims under CLRA (which could result in attorneys' fees and damages) and UCL (which could result in civil penalties and injunction). Sometimes, a sharply crafted letter demonstrating Biba's awareness of its rights and threats of regulatory complaints (FCC, CPUC, AG) can persuade T-Mobile to avoid a fight. Include that Biba attempted to resolve by payment plan, but that courtesy is not to be mistaken as a concession – T-Mobile remains legally obligated to port out the numbers regardless.

3. File an FCC Complaint (Parallel Track): File a consumer complaint with the FCC (online portal). The FCC often contacts the carrier to investigate such complaints. While this process can be slow, mentioning in your filing and to T-Mobile that an FCC complaint is filed adds pressure. The FCC could impose fines or further orders on T-Mobile if it finds willful non-compliance. Even a copy of the

complaint attached to the demand letter may spur T-Mobile to act, as FCC oversight is taken seriously by carriers. (Note: Also consider cc'ing the California Public Utilities Commission's Consumer Affairs branch. Even if CPUC can't adjudicate, they often forward complaints to the carrier for response, which is another point of pressure.)

4. Litigation for Injunctive Relief: If T-Mobile does not promptly release the numbers, proceed to court. Prepare a complaint asserting:

    o Violation of FCC LNP rules (as an "unlawful business practice" under BPC §17200, and possibly directly under a federal private right of action if chosen).

    o Violation of PUC §2890(d) (also as unlawful under §17200).

    o CLRA violations (misrepresentation of rights and unconscionable contract terms) – include the required CLRA venue and damages language, and consider sending a CLRA notice if seeking damages; for an injunction, one can sue immediately.

    o Breach of contract / breach of implied covenant (optional): argue that the contract incorporates compliance with law and good faith dealing, which T-Mobile breached by this bad-faith refusal.

    o UCL – Unfair practices (balance of equities and public policy as discussed).

    o A cause for Declaratory Relief: asking the court to declare that my company and I has the right to port its numbers out and that any contract term to the contrary is void as against public policy.

5.
    Alongside the complaint, file an application for a Temporary Restraining Order and Order to Show Cause for preliminary injunction. In the TRO, request an order that T-Mobile immediately enable the porting of the specified phone numbers to my company new carrier, or otherwise refrain from deactivating or reassigning those numbers, pending trial. Emphasize the irreparable harm and likelihood of success given clear law on the matter. Attach supporting declarations from Mario Juarez about the business impact, and possibly from telecom experts or customers if needed to show how essential the number is.

6. Public/AG Leverage: If time permits, forward the scenario to the California Attorney General's consumer protection division or even the Federal Trade Commission. While the FCC is primary for telecom, the FTC and AG can pursue general unfair practice claims against carriers. The threat of a state AG

investigation might motivate T-Mobile to resolve the issue swiftly (they would not want to fight an AG over a practice that could affect many customers and risk fines).

7. Preserve Evidence and Mitigate: Keep logs of any business lost or customer complaints due to this porting issue – this can support any claim for damages. Meanwhile, to mitigate harm, my company might set up call forwarding or message announcements if possible. (For example, if T-Mobile hasn't disconnected service entirely, My company can still use the numbers to tell callers about alternate contact methods. Demonstrating to the court that my company is trying to mitigate harm also helps its equities).

8. Do Not Yield on Payment-for-Porting: Continue to refuse any demand that the full $28,000 must be paid to release the numbers. That demand has no legal basis. If T-Mobile offers a compromise (e.g., "pay half and we'll release"), i should be cautious. Accepting any such deal could undercut the legal claim that T-Mobile had no right to demand payment for porting. My rights are clear – it can switch carriers and keep its numbers and still owe the debt. T-Mobile can be paid through normal collections or court judgment, but not by holding the numbers. Any settlement negotiation should separate the issues: arrange a payment plan or dispute resolution for the debt distinct from the immediate porting of numbers. Ideally, get the numbers ported first, then negotiate the debt without the number leverage involved.

By following these steps, i should be able to secure its phone numbers promptly and then handle the outstanding balance through ordinary legal channels. The law is designed to protect businesses and consumers in exactly this situation – ensuring that providers like T-Mobile cannot strong-arm customers by threatening to cut off their long-established phone numbers. With the above legal authorities and a proactive approach, Biba stands an excellent chance of prevailing and obtaining relief.

Conclusion: i has the legal right to port out its telephone numbers from T-Mobile immediately, notwithstanding any unpaid balance. Federal law (FCC) is unequivocal on this point, and California law provides additional remedies. T-Mobile's stance is legally untenable. The recommended strategy is to press this advantage through a combination of demand, regulatory complaint, and swift injunctive litigation. This will protect Biba's critical phone numbers from being disconnected or reassigned. Given the clear statutory and regulatory support – "Consumers have the right to change voice service providers…and keep the same phone number" – Biba should confidently move to enforce its rights, while still addressing the debt through proper channels. The goal is to ensure

Biba keeps its lines of communication open and intact, maintaining business continuity as the financial dispute is resolved. With strong advocacy, Biba can achieve that outcome and set a precedent that carriers cannot use phone numbers as ransom for payment.

Sincerely,


Mario Juarez
510-688-9997

**4:22**

Time-Sensitive Transaction

 **Dawn Miller**
To: dawn.fragnoli@t-mobile.c... & 20 mc

## CAUTION: EXTERNAL EMAIL

Good afternoon Mr. Juarez,

Following up on your canceled account
(949864937), we understand the impact thi
have on your business. After a thorough revi
we're unable to offer an additional payment
arrangement at this time.

To resume service, the full balance of $29,2(
including any applicable restoration fees, mu
paid in full.  Once the payment is successful
posted. we can restore service and provide t

21



**Mario Juarez**
mario@mariojuarez.com

**Mario Juarez Organization**
Mobile: 510-821-6699
1241 High Street, Oakland California 94601
www.mariojuarez.co



On Jun 17, 2025, at 2:23 PM, Mario Juarez <Mario@mariojuarez.co> wrote:

Ok my phone number 510-688-9997

And on regarding to the payment in full as a condition of releasing and porting out the number its beneficial for my follow up.

Best,

Mario Juarez for
VIVA ENTERTAINMENT CO
OAKLAND CALIFORNIA



**Mario Juarez**
mario@mariojuarez.com

**Mario Juarez Organization**
Mobile: 510-821-6699
1241 High Street, Oakland California 94601
www.mariojuarez.co

22

On Jun 17, 2025, at 1:17 PM, Dawn Miller <dawn.fragnoli@t-mobilesupport.com> wrote:


**CAUTION: EXTERNAL EMAIL**

Good afternoon Mr. Juarez,

Following up on your canceled account (949864937), we understand the impact this may have on your business. After a thorough review, we're unable to offer an additional payment arrangement at this time.

To resume service, the full balance of $29,265.23, including any applicable restoration fees, must be paid in full.  Once the payment is successfully posted, we can restore service and provide the port-out PIN for those lines.

Please let us know how you wish to proceed.

Very Respectfully,

Dawn Miller
P-Lead, Federal Government
Office Hours Monday-Friday 8am-5pm EST
Direct 470-671-5116 | dawn.fragnoli@t-mobilesupport.com
https://www.t-mobile.com/business | Follow us on Twitter, Facebook and LinkedIn


--------------- Original Message ---------------
**From:** Dawn Miller [dawn.fragnoli@t-mobile.com]
**Sent:** 6/17/2025 12:00 PM
**To:** mario@mariojuarez.com
**Cc:** mario@mariojuarez.net; wirelessporting@t-mobile.com; mario@mariojuarez.com; dawn.fragnoli@t-mobile.com; fccinfo@fcc-fcc.gov; executiveresolutions@t-mobile.com; customercare@t-mobile.com; mike.sievert@t-mobile.com; helpdesk@wavestreet.com; t-mobileforbusinesscollections@t-mobile.com; carlos.olvera8@t-mobile.com; mario@mariojuarez.co; mrmariojuarez@gmail.com; businessteam@t-mobile.com; executiverespomse@t-mobile.com; ceo@t-mobile.com; stephanie.barreda5@t-mobile.com; consumer-afairs@cpuc.ca.gov; michael.hughes@t-mobilesupport.com; thomas.stephan3@t-mobile.com
**Subject:** RE: SUBJECT: FINAL LEGAL DEMAND – Immediate Authorization to

23

Port All Numbers – Account #949-864-937 – Violations of FCC & CPUC Rules
[ ref:!00D800ashm.!500Hu02NrZwi:ref ]

Good morning Mr. Juarez,

I am trying to reach you however I do not have a valid phone number for you. Can you please provide a phone number that I can reach you at to further discuss your account and lines?

Very Respectfully,

Dawn Miller
P-Lead, Federal Government
Office Hours Monday-Friday 8am-5pm EST
Direct 470-671-5116 | dawn.fragnoli@t-mobile.com
https://www.t-mobile.com/business | Follow us on Twitter, Facebook and LinkedIn


--------------- Original Message ---------------
**From:** Mario Juarez [mario@mariojuarez.com]
**Sent:** 6/17/2025 12:34 AM
**To:** wirelessporting@t-mobile.com; fccinfo@fcc-fcc.gov; executiveresolutions@t-mobile.com; customercare@t-mobile.com; mike.sievert@t-mobile.com; carlos.olvera8@t-mobile.com; businessteam@t-mobile.com; executiverespomse@t-mobile.com; ceo@t-mobile.com; stephanie.barreda5@t-mobile.com; consumer-afairs@cpuc.ca.gov; michael.hughes@t-mobilesupport.com; thomas.stephan3@t-mobile.com
**Cc:** helpdesk@wavestreet.com; t-mobileforbusinesscollections@t-mobile.com; mario@mariojuarez.net; mario@mariojuarez.co; mrmariojuarez@gmail.com; mario@mariojuarez.com
**Subject:** SUBJECT: FINAL LEGAL DEMAND – Immediate Authorization to Port All Numbers – Account #949-864-937 – Violations of FCC & CPUC Rules

## ? SUBJECT: FINAL LEGAL DEMAND – Immediate Authorization to Port All Numbers – Account #949-864-937 – Violations of FCC & CPUC Rules

??

## Mailing Address for Hard Copy

T-Mobile USA, Inc.

Executive Resolutions / Legal Department

12920 SE 38th Street

24

Bellevue, WA 98006

Attn: Executive Legal Division / CEO Mike Sievert

From:
Mario Juarez
Authorized Account Holder
Viva Entertainment Company
1241 High Street
Oakland, CA 94601
Email: mariojuarez@gmail.com
EIN: 47-3853196
T-Mobile Account #: 949-864-937
PIN: 696969
Primary Line: 510-944-7744

To Whom It May Concern,

This is a final legal demand for the immediate authorization and release of all phone numbers associated with the above-referenced business account, held by Viva Entertainment Company, for porting to Wave Street Data, my authorized new service provider.

Despite repeated good-faith efforts to resolve this matter and provide all required account information, T-Mobile has unlawfully obstructed the port-out process and denied me access to my business-critical telephone numbers.

**? PHONE NUMBERS INCLUDED BUT NOT LIMITED TO BE RELEASED:**

1. 510-821-6699

2. 510-944-7744

3. 510-736-8080

4. 510-901-9090

5. 209-640-1111

6. 702-515-9797

7. 619-943-0202

8. 510-641-7733

9. 510-641-7711

10. 510-828-5806

…and any other numbers linked to this account.

## ?? LEGAL VIOLATIONS – FEDERAL & CALIFORNIA LAW

?

### FCC Regulation – 47 CFR § 52.35

"A provider may not refuse to port a number based on an outstanding balance, account suspension, or contract dispute. Porting must proceed once the customer is properly verified."

You are explicitly prohibited under federal law from denying my ability to port numbers due to a $28,000 balance or suspension status.

?

### FCC Declaratory Ruling DA 07-244 (2007)

"Refusal to port a number due to unpaid bills or other conditions is unlawful and subject to enforcement. Porting rights are not conditional on account standing."

Your denial violates both the spirit and letter of FCC portability rules and exposes you to federal enforcement action.

?

### California Public Utilities Commission Decision D.07-09-019

"California adopts FCC porting rules in full. Carriers cannot use account delinquency or suspension to deny a valid port request."

This is binding in California and directly applies to wireless carriers operating in the state.

?

**California Public Utilities Code § 710**

"No provider... shall interfere with or block a consumer's ability to port his or her telephone number to another provider."

Your obstruction is a clear statutory violation.

**?**

**California PU Code § 2890(c)**

"A telephone corporation shall not make any change in a subscriber's provider choice without express authorization."

I provided authorization. You are not legally allowed to override it.

**?**

**California Civil Code § 1770 (CLRA)**

"Misrepresenting a consumer's legal rights or remedies" is a prohibited and actionable business practice.

Telling me I cannot port my numbers without paying in full is a misrepresentation of my legal rights.

**?**

**California Business & Professions Code § 17200 (UCL)**

Prohibits unlawful, unfair, or fraudulent business acts.
Denying phone number portability as leverage to collect a debt is an unfair practice, especially when payment arrangements have been proposed and ignored.

**? TIMELINE OF DOCUMENTED ATTEMPTS**

1. May 28 & June 2, 2025: Port-out requests submitted by Wave Street Data, denied by T-Mobile.

2. June 12, 2025: I sent a detailed email to CEO Mike Sievert and your Executive Team offering a $5,000 immediate payment and $5,000 biweekly as a resolution.

27

3. June 14 & June 16, 2025: Follow-up emails were sent to five T-Mobile executive and collections contacts.

4. No response received.

5. Phone call with T-Mobile Business Resolution: I was informed that no numbers would be released unless the full balance was paid.

This constitutes a documented pattern of non-response, legal obstruction, and unfair business practice.

## ? BUSINESS HARM SUFFERED

Your refusal to port out my business numbers has:

1. Crippled communications with long-standing clients

2. Resulted in loss of contracts and revenue

3. Created reputational damage

4. Prevented me from conducting lawful business activities in California

Several of these numbers have been in use for over 20 years and are widely published as part of government, corporate, and vendor contact records.

## ?? LEGAL RETALIATION DISCLAIMER

Let me be clear:

I am not refusing to pay the debt. I made multiple written payment proposals and attempted to resolve this in good faith. You refused to respond.

If T-Mobile attempts to sue me, initiate collections, or take retaliatory legal action without first complying with federal and state law regarding number portability, I will:

1. File a counterclaim for damages and business loss

2. Seek injunctive relief for unlawful interference

3. Pursue attorney's fees, regulatory penalties, and statutory damages

4. Report your conduct to consumer protection media, state regulators, and industry watchdogs

This letter does not waive any legal rights or remedies, and serves as final notice and opportunity to comply.

## ? DEMAND FOR ACTION – DEADLINE 24 HOURS

You are hereby given 24 hours from receipt of this email and letter to:

1. Authorize and release all phone numbers associated with the account for immediate porting to Wave Street Data

2. Provide written confirmation that no further delays or blocks will be imposed based on balance or account status

If you do not comply, I will file:

1. An FCC complaint under 47 CFR § 52.35

2. A CPUC complaint citing CPUC D.07-09-019, PU Code §§ 710 & 2890

3. A California Attorney General complaint for violations of CLRA and UCL

4. A civil action in court seeking economic damages, public injunction, and statutory penalties

Respectfully,

Mario Juarez

Viva Entertainment Company

mariojuarez@gmail.com

510-944-7744

**From:** Mario Juarez
**Sent:** Monday, June 16, 2025 2:00 PM
**To:** Stephanie Barreda <Stephanie.Barreda5@t-mobile.com>; Tom Stephan <Thomas.Stephan3@t-mobile.com>; Carlos Olvera Escamilla <Carlos.Olvera8@t-mobile.com>; SF-Michael Hughes <Michael.Hughes@t-mobilesupport.com>; executiverespomse@t-mobile.com; mike.sievert@t-mobile.com
**Cc:** T-MobileforBusinessCollections@t-mobile.com
**Subject:** RE: Important T-Mobile Account Update – ACTION NEEDED to your VIVA ENTERTAINMENT COMPANY LLC, reference account # 949864937. REQUEST FOR LINE RESTORATIONS-- LOGSTANDING BUSINESS CUSTOMER COMMITED TO A REPAYMENT PAN

Mr. Sievers and members of T-Mobile.

I was following up to my email from last week. I hope you all had a relaxing and excellent weekend.

In services yours truly,

Mario



**Mario Juarez**
mario@mariojuarez.CO

**Mario Juarez Organization**
Mobile: 510-821-6699
www.mariojuarez.co

Oakland – Delaware - Las Vegas – Miami Beach – Mexico City - Tijuana

30

**Mario Juarez**

| | |
|---|---|
| **From:** | Riaz Danekari <riaz@wavestreet.com> |
| **Sent:** | Friday, May 30, 2025 11:55 AM |
| **To:** | Mario Juarez |
| **Subject:** | RE: Port in order MARIO-CELL has been changed to status EXCEPTION |

**CAUTION: EXTERNAL EMAIL**

Ok it's done and resubmitted.

**From:** Mario Juarez <Mario@mariojuarez.co>
**Sent:** Friday, May 30, 2025 11:52 AM
**To:** Riaz Danekari <riaz@wavestreet.com>
**Subject:** Re: Port in order MARIO-CELL has been changed to status EXCEPTION

**CAUTION: EXTERNAL EMAIL**

510-974-9696 it's the number not on the account !



**Mario Juarez**
mario@mariojuarez.com

**Mario Juarez Organization**
Mobile: 510-821-6699
1241 High Street, Oakland California 94601
www.mariojuarez.co

On May 30, 2025, at 10:06 AM, Riaz Danekari <riaz@wavestreet.com> wrote:

<strong><span style='color: red;'>CAUTION: EXTERNAL EMAIL</span></strong>

One or more of the telephone numbers on this order is either disconnected or is no longer part of the account with the losing carrier and end user. Only active telephone numbers assigned to end user's can be ported. Please advise the end user to contact their current carrier to resolve. Once resolved, please advise the Bandwidth team for resubmittal.

-----Original Message-----
From: dashboard-updatenotification@bandwidth.com <dashboard-updatenotification@bandwidth.com>
Sent: Friday, May 30, 2025 4:20 AM
To: Riaz Danekari <riaz@wavestreet.com>
Subject: Port in order MARIO-CELL has been changed to status EXCEPTION

<strong><span style='color: red;'>CAUTION: EXTERNAL EMAIL</span></strong>

*** Replies above this line will be appended as notes to the order if applicable ***
*** Please limit replies to 10 lines of text or less ***
port_in: c432e901-abf5-4e21-81bd-d8d3abbd6e15
Status: EXCEPTION
Account: WaveStreet Managed Services, Inc. (5004623) Last Modified Date: Fri May 30 07:19:49 EDT 2025 Order History Entry: 7409: One or more of the telephone numbers on this order is either disconnected or is no longer part of the account with the losing carrier and end user. Only active telephone numbers assigned to end user's can be ported. Please advise the end user to contact their current carrier to resolve. Once resolved, please advise the Bandwidth team for resubmittal.
Link:
https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fapp.bandwidth.com%2fportal%2fr%2fa%2f5004623%2forders%2fportIn%2fc432e901-abf5-4e21-81bd-d8d3abbd6e15&c=E,1,pyyLSIvoeAysV4lP3h-tGow1NkKG4rOvwPNotpFLupCncieFooWYU-7jGcUNpJrRFLk5oUQketcZ1XYbWasOVnUpNtdtVk2PlCfmr7cbKQobA3blVW8EDQ,,&typo=1
Customer Order ID: MARIO-CELL

Telephone Numbers:
2096401111 5106402700 5106417711 5106417733 5107368080
5108216699 5108285806 5109019090 5109447744 5109749696
6199430202 7025159797 7252527788
Vendor Name: Bandwidth CLEC

**Mario Juarez**

| | |
|---|---|
| From: | Mario Juarez |
| Sent: | Monday, June 16, 2025 9:34 PM |
| To: | Stephanie Barreda; Tom Stephan; Carlos Olvera Escamilla; SF-Michael Hughes; executiverespomse@t-mobile.com; mike.sievert@t-mobile.com; ExecutiveResolutions@t-mobile.com; ceo@t-mobile.com; wirelessporting@t-mobile.com; FCCINFO@FCC-FCC.GOV; CONSUMER-AFAIRS@CPUC.CA.GOV; BUSINESSTEAM@T-MOBILE.COM; CUSTOMERCARE@T-MOBILE.COM; WIRELESSPORTING@T-MOBILE.COM; CEO@T-MOBILE.COM; ExecutiveResolutions@t-mobile.com |
| Cc: | T-MobileforBusinessCollections@t-mobile.com; helpdesk@wavestreet.com; Mario Juarez; Mario Juarez; Mario Juarez; Mario Juarez |
| Subject: | ✉ SUBJECT: FINAL LEGAL DEMAND – Immediate Authorization to Port All Numbers – Account #949-864-937 – Violations of FCC & CPUC Rules |

**🔴 SUBJECT: FINAL LEGAL DEMAND – Immediate Authorization to Port All Numbers – Account #949-864-937 – Violations of FCC & CPUC Rules**

**Mailing Address for Hard Copy**

T-Mobile USA, Inc.

Executive Resolutions / Legal Department

12920 SE 38th Street

Bellevue, WA 98006

Attn: Executive Legal Division / CEO Mike Sievert

From:
Mario Juarez
Authorized Account Holder
Viva Entertainment Company
1241 High Street
Oakland, CA 94601
Email: mariojuarez@gmail.com
EIN: 47-3853196
T-Mobile Account #: 949-864-937
PIN: 696969
Primary Line: 510-944-7744

1

To Whom It May Concern,

This is a final legal demand for the immediate authorization and release of all phone numbers associated with the above-referenced business account, held by Viva Entertainment Company, for porting to Wave Street Data, my authorized new service provider.

Despite repeated good-faith efforts to resolve this matter and provide all required account information, T-Mobile has unlawfully obstructed the port-out process and denied me access to my business-critical telephone numbers.

## 📱 PHONE NUMBERS INCLUDED BUT NOT LIMITED TO BE RELEASED:

- 510-821-6699
- 510-944-7744
- 510-736-8080
- 510-901-9090
- 209-640-1111
- 702-515-9797
- 619-943-0202
- 510-641-7733
- 510-641-7711
- 510-828-5806

…and any other numbers linked to this account.

## ⚖️ LEGAL VIOLATIONS – FEDERAL & CALIFORNIA LAW

◆

### FCC Regulation – 47 CFR § 52.35

"A provider may not refuse to port a number based on an outstanding balance, account suspension, or contract dispute. Porting must proceed once the customer is properly verified."

You are explicitly prohibited under federal law from denying my ability to port numbers due to a $28,000 balance or suspension status.



## FCC Declaratory Ruling DA 07-244 (2007)

Refusal to port a number due to unpaid bills or other conditions is unlawful and subject to enforcement. Porting rights are not conditional on account standing."

Your denial violates both the spirit and letter of FCC portability rules and exposes you to federal enforcement action.



## California Public Utilities Commission Decision D.07-09-019

"California adopts FCC porting rules in full. Carriers cannot use account delinquency or suspension to deny a valid port request."

This is binding in California and directly applies to wireless carriers operating in the state.



## California Public Utilities Code § 710

"No provider… shall interfere with or block a consumer's ability to port his or her telephone number to another provider."

Your obstruction is a clear statutory violation.



## California PU Code § 2890(c)

"A telephone corporation shall not make any change in a subscriber's provider choice without express authorization."

I provided authorization. You are not legally allowed to override it.



## California Civil Code § 1770 (CLRA)

"Misrepresenting a consumer's legal rights or remedies" is a prohibited and actionable business practice.

3

Telling me I cannot port my numbers without paying in full is a misrepresentation of my legal rights.



## California Business & Professions Code § 17200 (UCL)

Prohibits unlawful, unfair, or fraudulent business acts.
Denying phone number portability as leverage to collect a debt is an unfair practice, especially when payment arrangements have been proposed and ignored.

## 📧 TIMELINE OF DOCUMENTED ATTEMPTS

- May 28 & June 2, 2025: Port-out requests submitted by Wave Street Data, denied by T-Mobile.
- June 12, 2025: I sent a detailed email to CEO Mike Sievert and your Executive Team offering a $5,000 immediate payment and $5,000 biweekly as a resolution.
- June 14 & June 16, 2025: Follow-up emails were sent to five T-Mobile executive and collections contacts.
- No response received.
- Phone call with T-Mobile Business Resolution: I was informed that no numbers would be released unless the full balance was paid.

This constitutes a documented pattern of non-response, legal obstruction, and unfair business practice.

## ✖ BUSINESS HARM SUFFERED

Your refusal to port out my business numbers has:

- Crippled communications with long-standing clients
- Resulted in loss of contracts and revenue
- Created reputational damage
- Prevented me from conducting lawful business activities in California

Several of these numbers have been in use for over 20 years and are widely published as part of government, corporate, and vendor contact records.

4

## 🛡 **LEGAL RETALIATION DISCLAIMER**

Let me be clear:

I am not refusing to pay the debt. I made multiple written payment proposals and attempted to resolve this in good faith. You refused to respond.

If T-Mobile attempts to sue me, initiate collections, or take retaliatory legal action without first complying with federal and state law regarding number portability, I will:

- File a counterclaim for damages and business loss
- Seek injunctive relief for unlawful interference
- Pursue attorney's fees, regulatory penalties, and statutory damages
- Report your conduct to consumer protection media, state regulators, and industry watchdogs

This letter does not waive any legal rights or remedies, and serves as final notice and opportunity to comply.

## 🦅 **DEMAND FOR ACTION – DEADLINE 24 HOURS**

You are hereby given 24 hours from receipt of this email and letter to:

1. Authorize and release all phone numbers associated with the account for immediate porting to Wave Street Data
2. Provide written confirmation that no further delays or blocks will be imposed based on balance or account status

If you do not comply, I will file:

- An FCC complaint under 47 CFR § 52.35
- A CPUC complaint citing CPUC D.07-09-019, PU Code §§ 710 & 2890
- A California Attorney General complaint for violations of CLRA and UCL
- A civil action in court seeking economic damages, public injunction, and statutory penalties

Respectfully,

Mario Juarez

Viva Entertainment Company

5

mariojuarez@gmail.com

510-944-7744



**From:** Mario Juarez
**Sent:** Monday, June 16, 2025 2:00 PM
**To:** Stephanie Barreda <Stephanie.Barreda5@t-mobile.com>; Tom Stephan <Thomas.Stephan3@t-mobile.com>; Carlos Olvera Escamilla <Carlos.Olvera8@t-mobile.com>; SF-Michael Hughes <Michael.Hughes@t-mobilesupport.com>; executiverespomse@t-mobile.com; mike.sievert@t-mobile.com
**Cc:** T-MobileforBusinessCollections@t-mobile.com
**Subject:** RE: Important T-Mobile Account Update – ACTION NEEDED to your VIVA ENTERTAINMENT COMPANY LLC, reference account # 949864937. REQUEST FOR LINE RESTORATIONS-- LOGSTANDING BUSINESS CUSTOMER COMMITED TO A REPAYMENT PAN

Mr. Sievers and members of T-Mobile.

I was following up to my email from last week. I hope you all had a relaxing and excellent weekend.

In services yours truly,

Mario



**Mario Juarez**
mario@mariojuarez.CO

**Mario Juarez Organization**
Mobile: 510-821-6699
www.mariojuarez.co
Oakland – Delaware - Las Vegas – Miami Beach – Mexico City - Tijuana

       

**From:** Mario Juarez
**Sent:** Friday, June 13, 2025 11:03 AM
**To:** Stephanie Barreda <Stephanie.Barreda5@t-mobile.com>; Tom Stephan <Thomas.Stephan3@t-mobile.com>; Carlos Olvera Escamilla <Carlos.Olvera8@t-mobile.com>; SF-Michael Hughes <Michael.Hughes@t-mobilesupport.com>; executiverespomse@t-mobile.com; mike.sievert@t-mobile.com
**Cc:** T-MobileforBusinessCollections@t-mobile.com
**Subject:** Re: Important T-Mobile Account Update – ACTION NEEDED to your VIVA ENTERTAINMENT COMPANY LLC, reference account # 949864937. REQUEST FOR LINE RESTORATIONS-- LOGSTANDING BUSINESS CUSTOMER COMMITED TO A REPAYMENT PAN

 ir. Sievert:

I sent the above email to the wrong address.

Sorry.

Please read below.

Mario



**Mario Juarez**
mario@mariojuarez.com

**Mario Juarez Organization**
Mobile: 510-821-6699
www.mariojuarez.co

On Jun 12, 2025, at 4:41 PM, Mario Juarez <mario@mariojuarez.com> wrote:

Dear Mr. Sievert,

My name is Mario Juarez, and I'm writing to you not only as the CEO of T-Mobile but as someone I hope will understand the kind of fight small business owners face when circumstances turn against us — and the kind of trust it takes to ask for help again.

I've been a T-Mobile business customer for nearly a decade. My companies, my clients, and my team have all relied on your services to operate daily. The shutdown of my business lines — though I understand why it occurred — has made it significantly harder for me to recover financially, because my phone is the bloodline of everything I do.

This isn't the first time I've faced hardship. And in the past, when I reached out, T-Mobile extended support — and in most of those moments, I was able to come through on my commitments. I'll be honest: there was a time I couldn't complete the payment plan. But I always made my best effort. And I've never stopped working to make things right.

Today, I'm asking for your help again — not for a handout, but for the opportunity to make good on this obligation with momentum.

1. I have $5,000 available right now and am prepared to pay it today.

2. I'm committing to $5,000 every two weeks until my balance — roughly $28,000 — is fully resolved.

3. I believe that if my lines are restored, I'll be able to accelerate payments even faster — possibly every 10 days — because I'll finally have the tools I need to generate revenue again.

Since my suspension, I've worked through every available option — selling assets, collecting on past debts, negotiating contracts. I even gave my last payment knowing it would leave me overdrawn, because I needed to show my intent was real.

In parallel, I've started auditing unused lines, cutting down my monthly costs, and restructuring how I use T-Mobile's services. I want to be lean, responsible, and long-term.

Mr. Sievert, I'm not proud of how I arrived here — but I am proud of the fight I've put up to stay afloat. I'm reaching out to you with respect, humility, and full commitment. Please authorize the restoration of all my lines, so I can make good on this plan.

I believe in T-Mobile's mission. I believe in the way you've stood by customers like me before. I'm asking you now not to give up on someone who's still trying to make it right — because I believe I still can.

With respect and readiness to pay,

**Mario Juarez**

| | |
|---|---|
| **From:** | T-Mobile USA <donotreply@notifications.t-mobile.com> |
| **Sent:** | Monday, June 23, 2025 8:13 AM |
| **To:** | Mario Juarez |
| **Subject:** | Your T-Mobile account needs to be refilled. |

**CAUTION: EXTERNAL EMAIL**

Make a payment to continue service.

# ·T· Mobile

**ACCOUNT NUMBER:** 176367910

# Refill your T-Mobile account now

Hi ,

Your monthly plan is about to renew. You must make a payment to refill your T-Mobile account by **06/25/2025** to continue uninterrupted service.

You can pay online at my.t-mobile.com. Please disregard if you've already paid for the next month's service.

**Refill now**

Sincerely,
Your T-Mobile Team

1

THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY.

T-Mobile, the T logo, Magenta, and the magenta color are registered trademarks of Deutsche Telekom AG. © 2023 T-Mobile USA, Inc.

Terms of Use | Terms & Conditions | Return Policy | Privacy Policy

**View this email as a webpage >**

**Mario Juarez**

| | |
|---|---|
| **From:** | Dedicated Expert <salesforcesystemresponse@t-mobile.com> |
| **ent:** | Friday, June 13, 2025 11:03 AM |
| **To:** | Mario Juarez |
| **Subject:** | Thank you for contacting T-Mobile USA 21415060 |

**CAUTION: EXTERNAL EMAIL**



Hello Mario Juarez,

Thank you for reaching out! Your Expert has received your email Re: Important T-Mobile Account Update – ACTION NEEDED to your VIVA ENTERTAINMENT COMPANY LLC, reference account # 949864937. REQUEST FOR LINE RESTORATIONS-- LOGSTANDING BUSINESS CUSTOMER COMMITED TO A REPAYMENT PAN and will be with you as soon as possible.

For your reference, your case number is 21415060.

If you need immediate assistance, we've got you covered! Feel free to call your Customer Support Expert using their direct extension or contact your T-Mobile for Business Team of Experts at 1-800-375-1126.

Thank you,

The T-Mobile for Business Customer Support Team

**Please do not respond to this email.**

