**ARENTFOX SCHIFF LLP**
Lynn R. Fiorentino (SBN 226691)
44 Montgomery St., 38th Floor
San Francisco, CA 94104
Telephone: 415.757.5500
Facsimile: 415.757.5501
lynn.fiorentino@afslaw.com

Lawrence H. Heftman (*pro hac vice*)
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: 312.258.5725
Facsimile: 312.258.5600
lawrence.heftman@afslaw.com

*Attorneys for Defendant T-Mobile USA, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO JUAREZ,<br><br>      Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>      Defendants. | Case No. 3:25-cv-05280-WHO<br><br>**DEFENDANT T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br><u>Hearing</u><br>Date:   Monday, July 7, 2025<br>Time:   2:00 p.m.<br>Courtroom: 2<br>Judge:   Hon. William H. Orrick |

# INTRODUCTION

The Court should deny Plaintiff's request for a temporary restraining order because he cannot and will not be able to show a likelihood of success, has not shown likely irreparable harm, and the equities favor T-Mobile. The Court rightly observed in its Order that Plaintiff's own filings demonstrate that his T-Mobile account "was 'cancelled' before he sought to port out the numbers." (Dkt. 14 at 1.) That undisputed fact is dispositive of his TRO request.

T-Mobile canceled Plaintiff's account after he failed, for more than five months, to make payments on an account balance exceeding $29,000. Plaintiff incurred this substantial debt to T-Mobile following a December 2024 shopping spree in which he purchased 16 devices including numerous iPhones and iPads. *After* Plaintiff's account was canceled and his phone numbers disconnected, he attempted to port his numbers to a new carrier, but his attempt failed because the numbers could not be ported over from a canceled account. Even though he never requested a port out prior to cancellation and T-Mobile had the clear right to cancel his account for non-payment, Plaintiff seeks to enjoin T-Mobile from allowing the phone numbers on his canceled account to be reassigned to other users consistent with standard procedures among telecommunications carriers.

Plaintiff's claims have no likelihood of success—and therefore cannot support a TRO—for two simple reasons. First, T-Mobile had no obligation to port over Plaintiff's phone numbers after his T-Mobile account was canceled for non-payment. Second, under 47 U.S.C. § 207, Plaintiff cannot bring his federal claims after previously having filed a complaint with the Federal Communications Commission ("FCC") for the same claims. So Plaintiff's litigation choices bar him from pursuing his principal claims. Because Plaintiff is unlikely to succeed on the merits of his claims, he cannot meet his burden to obtain a TRO. Moreover, Plaintiff offers no evidence of irreparable harm, relying solely on conclusory assertions. Nor do the equities favor Plaintiff because T-Mobile's cancellation of the account prior to the port out request was clearly justified and a product of Plaintiff's own conduct. The Court should deny Plaintiff's motion.

# FACTUAL BACKGROUND

On December 16, 2024, Plaintiff purchased at least 16 devices from T-Mobile, including 9 iPhones, 5 iPads, and 2 Apple watches. Declaration of Brian Bollig ¶¶ 4-5, Ex. 1 (hereinafter "Bollig

Decl."). After down payments, the outstanding balance on those devices totaled $13,409.92. *Id.*

On February 21, 2025, Plaintiff's T-Mobile account was suspended due to non-payment of his bills. Bollig Decl. ¶ 6. On March 10, 2025, T-Mobile canceled Plaintiff's account due to Plaintiff's continued failure to make any payments. *Id.* ¶ 7.

On March 26, 2025, after several attempts by T-Mobile to contact Plaintiff and obtain payment, Plaintiff's account was reinstated after he made a $1,000.00 payment. *Id.* ¶ 8. At that time, Plaintiff further agreed to pay an additional $5,000.00 in three weeks, followed by monthly $5,000.00 payments thereafter until his account balance was satisfied. *Id.* However, Plaintiff made no further payments on his T-Mobile account after his $1,000.00 payment on March 26, so T-Mobile suspended his account again on May 1, 2025. *Id.* ¶¶ 9-10.

After additional attempts to contact Plaintiff and obtain payment were unsuccessful, T-Mobile canceled his account on May 27, 2025. *Id.* ¶ 11; Dkt. 5 at 5-6, 15. At the time of the cancellation, the remaining outstanding balance on Plaintiff's account was $29,265.23. Bollig Decl. ¶ 11; Dkt. 5 at 15. At the time of the May 27, 2025 cancellation, Plaintiff had not requested that T-Mobile port out any phone numbers associated with the account. Bollig Decl. ¶ 12.

On May 28, 2025, the day after his account was cancelled (and the phone numbers therefore ceased to function), Plaintiff attempted to port out many of those telephone numbers to a new carrier, WaveStreet Data. (Dkt. 17 at p. 6 ¶ 4; Dkt. 5 at 5-6.) However, because Plaintiff's T-Mobile account was cancelled, WaveStreet informed him that "[o]ne or more of the telephone numbers on this order is either disconnected or is no longer part of the account." (Dkt. 5 at 5-6.) Because "[o]nly active telephone numbers assigned to end user's [*sic*] can be ported," WaveStreet was unable to port over Plaintiff's T-Mobile telephone numbers. (*Id.*)

Due to the May 27, 2025 cancellation of Plaintiff's account, phone numbers associated with his account will be eligible to be reassigned to another customer 45 days after cancellation of his account, on July 12, 2025. *See* 47 C.F.R. § 52.15(f)(l)(ii).

## **TRO STANDARD**

The legal standard for a TRO is "substantially identical to the standard for a preliminary injunction." *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020). "'A

preliminary injunction is an extraordinary remedy never awarded as of right.'" *Id.* (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008)). A plaintiff seeking a TRO has the burden to "establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Irreparable harm must be *likely*—it is not sufficient to grant a TRO upon a mere showing of a "possibility" of irreparable harm when the other factors weigh heavily in favor of the plaintiff. *See id.* at 22. Where the plaintiff has a low likelihood of success on the merits, courts refuse to enter a TRO even if other factors favor the plaintiff. *See, e.g.*, *Washington v. Nat'l City Mortg. Co.*, No. 10-cv-5042, 2010 WL 5211506, at *6 (N.D. Cal. Dec. 16, 2010) (denying motion for TRO and preliminary injunction given plaintiffs' failure to establish likelihood of success on the merits).

## ARGUMENT

All of Plaintiff's causes of action will fail, so he cannot obtain a TRO. First, T-Mobile had no obligation to port over Plaintiff's phone numbers after his T-Mobile account was canceled for non-payment. Second, under 47 U.S.C. § 207, because Plaintiff previously filed a complaint with the FCC, Plaintiff cannot bring his federal claims for the same conduct. Because Plaintiff has not even raised "serious questions going to the merits," the Court may deny his motion for TRO without addressing the remaining TRO factors. *See BrandTotal*, 499 F. Supp. 3d at 732; *Washington*, 2010 WL 5211506, at *6. Nevertheless, the other factors do not support Plaintiff's TRO request. Plaintiff has failed to meet his burden to substantiate his request for a TRO.

**I.    Plaintiff is Not Likely to Succeed on the Merits.[1]**

   **A.    All of Plaintiff's Claims Fail Because T-Mobile is Not Required to Port Over Phone Numbers From a Canceled Account.**

All of Plaintiff's claims fail because the very premise of his entire lawsuit is incorrect. T-Mobile did not deny Plaintiff's port out request because he had an outstanding balance, but rather

---

[1] In the interest of efficiently disposing of Plaintiff's Motion on an expedited basis and due to the limited scope of the Court's Order (Dkt. 14), this Opposition sets forth two primary reasons why all of Plaintiff's claims will fail. T-Mobile reserves the right to raise additional arguments in response to any claims in a motion to dismiss or other responsive pleading. Further, T-Mobile reserves and does not waive the right to move to compel arbitration should this case proceed further beyond this request for temporary injunctive relief.

because his account was already canceled for non-payment. T-Mobile had no legal obligation to port over Plaintiff's inactive phone numbers at the time he requested them, because his account already had been canceled and his phone numbers disconnected.

Plaintiff's own allegations establish that his T-Mobile account was canceled *before* he requested to port over any of his phone numbers to a new carrier. (Dkt. 17 at p.6 ¶ 4; Dkt. 16 at 6-7; Dkt. 5 at 5-6., 15.) As shown in Plaintiff's exhibits and detailed in the attached declaration of Brian Bollig, the cancellation of Plaintiff's account followed repeated failures to pay the balance due to T-Mobile. *See supra* at 2-3. Indeed, Plaintiff's account previously had been canceled and suspended for non-payment on multiple occasions between February and May 2025 before the final cancellation on May 27, 2025. *See supra* at 3. That is why T-Mobile canceled the account and that action occurred prior to any port out request.

Applicable regulations and guidance direct that porting obligations apply only to active accounts. *See, e.g.*, 47 U.S.C. § 153(37) (limiting number portability to customer's "existing telecommunications numbers"); https://www.fcc.gov/consumers/guides/porting-keeping-your-phone-number-when-you-change-providers (advising consumers "[d]o not terminate your service with your existing company before initiating new service with another company"); *cf.* Dkt. 5 at 5 (acknowledging that "[o]nly active telephone numbers assigned to end user's [*sic*] can be ported"). Plaintiff admits that his T-Mobile account has been canceled and that his phone numbers are "disconnected," because disconnection is the requirement to trigger the FCC's 45-day aging rule. *See* Dkt. 16 at 19, 7 C.F.R. § 52.15(f)(1)(ii).

Plaintiff repeatedly invokes carriers' general obligation to port active telephone numbers to a new carrier upon request, but identifies no authorities requiring porting an inactive and canceled account. *See* Dkt. 3 at 9-10; *see, e.g.*, 47 U.S.C. § 251(b)(2) (discussing a duty to provide number portability only "to the extent technically feasible"); 47 C.F.R. §§ 52.26, 52.35 (setting forth interval of one business day to port over phone numbers without reference to account status).[2] On the morning

---

[2] Plaintiff also cites *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 (1999), *Cent. Tel. Co. of Va. v. Sprint13 Commc'ns Co.*, 715 F.3d 501, 509 (4th Cir. 2013), and *Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*, 550 U.S. 45, 53 (2007), to support his federal claims (Dkt. 3 at 9), but those decisions do not even substantively discuss carriers' phone number portability obligations.

of July 3, 2025, Plaintiff submitted to the Court additional materials purporting to clarify and identify further legal support for his TRO request. (*See* Dkt. 22-24.) Plaintiff cites a number of federal statutes, regulations, and administrative orders, none of which imposes an obligation to port disconnected phone numbers from a canceled account. (*See* Dkt. 22 at 3-4; Dkt. 23 at 2.) Most notably, the only authority Plaintiff identifies as requiring "porting for disconnected accounts," a 2007 "FCC Declaratory Ruling," was not attached as an exhibit to Plaintiff's filings nor available at the link Plaintiff cited. (*See* Dkt. 23 at 2.) Counsel for T-Mobile have attempted to identify the cited order from other sources and have not found any such order providing any support for Plaintiff's claim.[3]

All of Plaintiff's causes of action are contingent on T-Mobile's purported obligation to port over Plaintiff's phone numbers and all of those claims fail in the absence of that obligation. Plaintiff's federal claims (Counts 1-6, 15-19) are all premised on an alleged obligation for T-Mobile to port over Plaintiff's phone numbers without conditioning porting on payment. (*See, e.g.*, Dkt. 3 at 9; Dkt. 9 at 6; Dkt. 16 at 14-16.) Plaintiff's California law claims (Counts 7-14, 20-24) similarly require unlawful or fraudulent conduct. (*See, e.g.*, Dkt. 3 at 10; Dkt. 16 at 17-18; Dkt. 17 at 12-16.) Those claims fail where T-Mobile acted within its rights by canceling Plaintiff's account for repeated non-payment and by not porting over phone numbers from a canceled account. *See, e.g.*, Dkt. 3 at 10; Dkt. 9 at 6; *see also, e.g.*, *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393-94 (Cal. 1995) (plaintiff alleging interference with prospective economic advantage must plead and prove the "interference was wrongful by some measure beyond the fact of the interference itself"); *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998) (conversion claim requires conversion "by a wrongful act"); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (claims under California unfair competition laws require Defendant's conduct to be "unlawful, unfair or fraudulent"); Dkt. 17 at 15 (premising Count 20 on allegedly "false statements" about "porting rights").

Simply put, Plaintiff is not likely to succeed on the merits of any of his claims where T-Mobile was not required to port over his phone number after his account was canceled and disconnected. It is

---

[3] *See* https://docs.fcc.gov/public/attachments/FCC-07-188A5_Rcd.pdf (2007 FCC Order numbered FCC 07-188).

Plaintiff's burden to show a likelihood of success on the merits. By failing to identify any legal authority requiring porting of phone numbers from canceled accounts, Plaintiff has failed to meet his burden. His request for a TRO should be denied on that basis alone.

### B. Plaintiff's Federal Claims Are Barred Under 47 U.S.C. § 207 Because Plaintiff Filed a Complaint With the FCC.

The federal causes of action in Plaintiff's First Amended Complaint allegedly are brought pursuant to 47 U.S.C. § 207 for purported violations of the federal telecommunications laws and related regulations. (*See* Doc. 17 at 10-15 (Counts 1-6, 15-19); *id.* at p. 3 ¶ 1 (claiming federal question jurisdiction for claims "enforceable via 47 [U.S.C.] 207").) But under 47 U.S.C. § 207, Plaintiff may not file both a complaint to the FCC and a federal lawsuit complaining of the same conduct. Because Plaintiff admits he filed an FCC Complaint before this lawsuit, his federal claims must be dismissed.

47 U.S.C. § 207 provides telecommunications customers with a choice between filing a complaint with the FCC and filing a private lawsuit in federal court:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; **but such person shall not have the right to pursue both such remedies**.

(Emphasis added.)

In light of this express statutory limitation, federal courts have held that a party that has previously filed a complaint with the FCC is barred from bringing suit in federal court based on the same claims. For example, in *Stiles v. GTE Southwest Inc.*, the plaintiff filed an informal complaint with the FCC, followed by a federal lawsuit seeking damages under the Communications Act, both alleging the same conduct by her local telecommunications company. 128 F.3d 904, 905 (5th Cir. 1997). The defendant telecommunications company filed a motion to dismiss, arguing *inter alia* that the court lacked subject matter jurisdiction because the plaintiff had elected to pursue her claims through the FCC and could not also file a federal lawsuit based on the same conduct. *Id.* at 905-06. The district court granted the motion to dismiss, finding that the plaintiff "had elected to pursue her claim administratively with the FCC, thereby precluding her from litigating her complaint in federal court." *Id.* at 906. The Fifth Circuit affirmed, finding that "the language of the statute is unambiguous:

A complainant can file a complaint either with the FCC or in federal district court, but not in both." *Id.* at 907 (holding that "§ 207 precludes a complainant from filing suit in federal court once she has initiated the administrative complaint process with the FCC either by filing a formal or informal complaint").

Other federal courts have held the same and dismissed federal claims by plaintiffs who previously filed a complaint with the FCC. *See Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 688 (5th Cir. 2006) ("[S]ection 207 is an election-of-remedies provision … once an election is made by either filing a complaint with the FCC or filing a complaint in federal court, a party may not thereafter file a complaint on the same issues in the alternative forum, regardless of the status of the complaint); *Mexiport, Inc. v. Frontier Commc'ns Servs., Inc.*, 253 F.3d 573, 575 (11th Cir. 2001) (holding that appellant could not file in federal court after having filed informal complaint with FCC); *Digitel, Inc. v. MCI Worldcom, Inc.*, 239 F.3d 187, 190 (2d Cir. 2001) (concluding that "a party that has filed an informal complaint [with the FCC] may not also sue in district court"); *Cincinnati Bell Tel. Co. v. Allnet Commc'n Servs., Inc.*, 17 F.3d 921, 923 (6th Cir. 1994) (deciding appellant could not have filed a counterclaim in the district court on the same dispute that was the subject of its FCC complaint); *Bell Atlantic Corp. v. MFS Commc'ns Co.*, 901 F. Supp. 835, 853 (D. Del. 1995) (holding that the district court did not have jurisdiction to hear complaint on same issues brought to the FCC).

Here, Plaintiff's own allegations establish that he has filed a complaint with the FCC based on the same conduct at issue in his complaint. (*See* Dkt. 17 at p. 8 ¶ 9; Dkt. 16 at p. 7 ¶ E.) Because Plaintiff elected to file a complaint with the FCC before filing suit, he cannot also pursue federal claims based on the same conduct. Plaintiff's FCC complaint deprives the Court of subject matter jurisdiction over his federal claims and warrant dismissal of his entire lawsuit.[4]

## II. The Remaining TRO Factors Do Not Support a TRO.

None of the remaining factors favor Plaintiff and certainly are not sufficient to warrant a TRO

---

[4] Courts dismissing federal claims by Plaintiffs who previously filed complaints with the FCC also decline supplemental jurisdiction over pendent state-law claims. *See, e.g.*, *Premiere Network Servs.*, 440 F.3d at 692. Here, Plaintiff alleges only supplemental jurisdiction over his "California claims" (Counts 7-14, 20-24) and federal question jurisdiction over his federal claims (Counts 1-6, 15-19). (*See* Dkt. 17 at 3-4.) As a result, all of Plaintiff's causes of action should be dismissed.

given Plaintiff's inability to show a likelihood of success on the merits. *See BrandTotal*, 499 F. Supp. 3d at 732 (TRO requires "serious questions going to the merits" even where other factors favor TRO); *Washington*, 2010 WL 5211506, at *6.

### A. Plaintiff Has Not Proven That He Will Likely Suffer Irreparable Harm by Losing His Phone Numbers.

Plaintiff fails to show that he will suffer irreparable harm sufficient to support the extraordinary remedy of enjoining T-Mobile to port over an inactive account.

As an initial matter, Plaintiff only provides conclusions in support of his assertion that losing access to certain phone numbers will irreparably harm his business. (Dkt. 16 at 18-19.) He does not even identify what the business is, what services it provides, or explain in any level of detail how the alleged loss of phone numbers would concretely impact its operations. (*Id.*) As the Ninth Circuit has highlighted, "[a] finding of likely irreparable harm cannot be based on unsupported and conclusory statements regarding harm—it must be based on factual findings." *Freelancer Int'l Pty Ltd. v. Upwork Global, Inc.*, 851 Fed. Appx. 40, 41-42 (9th Cir. June 22, 2021) (internal quotations omitted).

Even crediting Plaintiff's conclusory allegations, they still fail to establish irreparable harm. Plaintiff generically claims he will suffer irreparable harm if he loses phone numbers because they are tied to his business and he will lose "the means of communication with customers." (Dkt. 16 at 18-19.) But these phone numbers have been repeatedly suspended or canceled over the last five months due to Plaintiff's non-payment of his substantial balance. *See supra* at 3. Plaintiff does not contend that those lengthy suspensions of his accounts (which were entirely a result of Plaintiff's own non-payment) had any irreparable consequences for his business and therefore cannot credibly contend a permanent closure of these numbers would cause irreparable harm.

Furthermore, Plaintiff can notify his customers of his new contact information, mooting the risk of irreparable harm. Plaintiff acknowledges that he will be able to replace those phone numbers with new numbers to contact customers, but merely claims they "cannot be perfectly replaced." (*Id.* at 19.) Any harm Plaintiff may suffer from the loss of his phone numbers will be limited, a function of his own choice to incur a significant balance entitling T-Mobile to cancel his account prior to any port out request, and may be repaired—even if not "perfectly"—by obtaining new phone numbers. *See*

*C21FC LLC v. NYC Vision Cap. Inc.*, No. 22-cv-00736, 2022 WL 2191934, at *8 (D. Ariz. June 17, 2022) (denying TRO where Plaintiffs alleged only speculative harm "based on loss of clientele, business, and goodwill").

### B. The Balance of the Equities Does Not Tip in Plaintiff's Favor.

Equities favor T-Mobile's ability to terminate accounts for non-payment over a consumer's belated port request. Contrary to Plaintiff's charged characterization, this circumstance is a problem entirely of Plaintiff's own making. Plaintiff chose to order 16 devices in December 2024 causing a significant balance, then chose not to pay for them—even under a modified payment plan he negotiated with T-Mobile in March 2025—until his account was canceled. *See supra* at 2-3. There is no dispute that T-Mobile was entitled to cancel his account for non-payment. Only after T-Mobile canceled his account for non-payment did Plaintiff attempt to port over his phone numbers to escape his payment obligations. *See supra* at 3.

T-Mobile, on the other hand, gave Plaintiff many opportunities over the past six months to keep his account active despite his failure to make payments on his account. *See supra* at 3. In light of Plaintiff's conduct, the equities do not tip in his favor, let alone tip "sharply" toward him. *BrandTotal*, 499 F. Supp. 3d at 733. This factor does not support granting a TRO. *See, e .g.*, *Scottsdale Gas Co. LLC v. Tesoro Ref. & Mktg. Co. LLC*, No. 19-cv-19-05291, 2020 WL 954963, at *3 (D. Ariz. Feb. 27, 2020) (finding balance of equities a neutral factor and denying preliminary injunction based on Plaintiff's allegedly improper actions in breaching parties' agreement).

### C. A TRO is Not in the Public Interest.

Finally, granting a TRO is not in the public interest. The FCC only requires phone numbers to be aged for 45 days after permanent disconnection. 47 C.F.R. § 52.15(f)(l)(ii). T-Mobile properly disconnected Plaintiff's phone numbers for non-payment (*see supra* at 3), and those phone numbers should be returned to the available numbering pool for public reassignment once the FCC's aging rules have been satisfied. That is the structure created by the FCC and it should not be disrupted to favor a claimant whose account was properly canceled prior to any port request.

## CONCLUSION

For the foregoing reasons, T-Mobile respectfully requests that the Court deny Plaintiff's motion for a Temporary Restraining Order.

Dated: July 3, 2025

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

By: */s/ Lynn R. Fiorentino*
Lynn R. Fiorentino (SBN 226691)
44 Montgomery St., 38th Floor
San Francisco, CA 94104
Telephone: 415.757.5500
Facsimile: 415.757.5501
lynn.fiorentino@afslaw.com

Lawrence H. Heftman (*pro hac vice*)
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: 312.258.5725
Facsimile: 312.258.5600
lawrence.heftman@afslaw.com

*Attorneys for Defendant T-Mobile USA, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2025, the foregoing document was served on Plaintiff through the Court's electronic filing system and via email to Mario@mariojuarez.co.

*/s/ Lynn R. Fiorentino*
Lynn R. Fiorentino