MARIO JUAREZ
66 FRANKLIN STREET, SUITE 300
OAKLAND, CALIFORNIA 94601
mario@mariojuarez.co

# UNITED STATES OF AMERICA DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARIO JUAREZ, INDIVIDUALLY AND DOING BUSINESS AS VIVA ENTERTAINMENT COMPANY**<br>**,**<br><br>              **Plaintiff,**<br><br>vs.<br><br>**T-MOBILE USA, INC., A DELAWARE CORPORATION, AND DOES 1–20,**<br><br>              **Defendant(s)** | Case No.: **CV 25-5280-WHO**<br><br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND MOTION TO STRIKE DEFENDANT'S DECLARATION**<br><br>**[Filed Under Federal Rule of Civil Procedure 15(d) and Northern District of California Local Rule 7-3(d)]**<br><br>**Hearing Date: July 7, 2025**<br>**Judge: Hon. William H. Orrick** |

## MOTION FOR LEAVE TO EXCEED PAGE LIMIT

Plaintiff, appearing pro se, respectfully requests leave under Local Rule 7-4(b) to file a Supplemental Brief exceeding 15 pages due to T-Mobile's egregious telecommunications law violations, threatening not only my 10 phone numbers but the public's right to seamless number portability, as mandated by Congress (S. Rep. 104-23, p. 20, https://www.congress.gov/104/crpt/srpt23/CRPT-104srpt23.pdf). The urgency to protect my

numbers by July 12, 2025 (Exhibit A, p. 1, Dkt. 5), and the public interest demand a comprehensive response to T-Mobile's lies (Doc. 26, 26-1, Dkt. 26). Pro se status warrants leniency (Haines v. Kerner, 404 U.S. 519, 520 (1972), https://casetext.com/case/haines-v-kerner-8212-5025). Plaintiff respectfully requests leniency for filing on July 6, 2025, ensuring no prejudice to T-Mobile (Haines v. Kerner, 404 U.S. 519, 520).

## TABLE OF EXHIBITS

Exhibit A: Timeline of Events (Dkt. 5, pp. 5-6), detailing cancellation (May 27, 2025), porting denials (May 28, June 2), $5,000 offer (June 12), FCC complaint (June 18), selective treatment (June 27), delayed FCC response.

Exhibit B: Statutes and Regulations (Dkt. 3, p. 9), citing 47 C.F.R. § 52.35(b)(1), 47 U.S.C. § 251(b)(2), Cal. PUC § 2890.2, $5,000 offer.

Exhibit C: Dawn Miller Email (Dkt. 22), June 17, 2025, admitting restoration/porting feasibility.

Exhibit E: Payment Attempts (Dkt. 23).

Exhibit F: Michelle Williams Email (Dkt. 22), confirming payment demands, FCC delay.

Exhibit G: 10 Phone Numbers (Dkt. 16).

Exhibit H: FCC 07-188 (Dkt. 23), mandating porting (¶ 22, p. 1).

Exhibit K: FCC-03-237 (Dkt. 23), prohibiting account-based refusals (¶ 15, p. 6).

Exhibit L: FRCP 5(b)(2)(E) Compliance (Dkt. 17).

FCC Emails: FCC Correspondence, June 18, 2025, email confirming informal complaint (Dkt. 24, attached as new evidence).

First Email from Dawn Miller: Duplicates Exhibit C (Dkt. 22).

1   Complaint for Injunctive Relief and Damages (Dkt. 2).

2   Motion for Preliminary Injunction (Dkt. 4).

3   Memorandum in Support of Preliminary Injunction (Dkt. 6).

4   Declaration in Support of Preliminary Injunction (Dkt. 7).

5   Supplemental Declaration of Mario Juarez (Dkt. 18).

6   Notice of Errata (Dkt. 19).

7   Reply to T-Mobile's Opposition to Preliminary Injunction (Dkt. 21).

8   Notice of Related Case (Dkt. 20).

9   First Amended Complaint (Dkt. 17).

10   WaveStreet's Porting Inability (Dkt. 5).

11   Declaration of Mario Juarez (Dkt. 22).

12

13   **REQUEST FOR JUDICIAL NOTICE**

14   Plaintiff respectfully requests judicial notice of FCC-03-237 (Exhibit K, Dkt. 23,

15   https://docs.fcc.gov/public/attachments/FCC-03-237A1.pdf), FCC 09-41

16   (https://docs.fcc.gov/public/attachments/FCC-09-41A1.pdf), FCC 07-188 (Exhibit H, Dkt. 23,

17   https://docs.fcc.gov/public/attachments/FCC-07-188A1.pdf), FCC 95-284

18   (https://docs.fcc.gov/public/attachments/FCC-95-284A1.pdf), and S. Rep. 104-23

19   (https://www.congress.gov/104/crpt/srpt23/CRPT-104srpt23.pdf) under FRE 201

20   (https://www.law.cornell.edu/rules/fre/rule_201), as public records not subject to dispute, critical

21   to protecting consumers as Congress intended.

22

23   PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND
MOTION TO STRIKE DEFENDANT'S DECLARATION [FILED UNDER FEDERAL RULE OF CIVIL
PROCEDURE 15(D) AND NORTHERN DISTRICT OF CALIFORNIA LOCAL RULE 7-3(D)]HEARING DATE:
24   JULY 7, 2025 JUDGE: HON. WILLIAM H. ORRICK - 3

25

26

## INTRODUCTION

This is not a mere billing dispute, it is a public interest battle against T-Mobile USA, Inc.'s predatory, systemic violations of federal law, holding hostage my 10 phone numbers (Exhibit G, Dkt. 16), my digital identity as a small business entrepreneur for 25 years at 66 Franklin St, Suite 300, Oakland, CA 94607, and other Oakland locations, and threatening countless consumers with similar abuses. I, Mario Juarez, appearing pro se, humbly submit this Supplemental Brief under FRCP 15(d) (https://www.law.cornell.edu/rules/frcp/rule_15) and Local Rule 7-3(d) (https://www.cand.uscourts.gov/rules/civil-local-rules/7-motion-papers/), respectfully requesting a TRO to save these numbers—vital to my business and safety (SENTRI/Global Entry, FBI/DOJ whistleblower lines)—from permanent loss by July 12, 2025 (Exhibit A, p. 1, Dkt. 5; 47 C.F.R. § 52.15(f)(1)(ii), https://www.ecfr.gov/current/title-47/chapter-I/subchapter-B/part-52/subpart-B/section-52.15). T-Mobile's refusal to port to WaveStreet Data, despite my timely requests on May 28 and June 2, 2025 (Exhibit A, p. 1, lines 3-5, Dkt. 5), is a brazen violation of 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3): "No local exchange carrier or Commercial Mobile Radio Service provider shall refuse to port a number based on the fact that the customer's account with that carrier has been suspended or terminated, or because the customer has not paid charges for porting, has a balance due, or is otherwise in 'bad standing' with that carrier." Their extortionate demand for $29,265.23 (Exhibit C, p. 1; Exhibit F, p. 1; First Email from Dawn Miller, p. 1, Dkt. 22) defies FCC-03-237 (¶ 15, Exhibit K, p. 6, Dkt. 23), FCC 09-41 (¶ 15), FCC 07-188 (¶ 22, Exhibit H, p. 1, Dkt. 23), and FCC 95-284, undermining Congress's intent to protect consumers (S. Rep. 104-23, p. 20). T-Mobile's "shopping spree" lie (Doc. 26-1, ¶ 9, Dkt. 26-1) is a vile slander, ignoring my payments ($1,000, March 2025), unconnected devices, and prior

restorations (Declaration of Mario Juarez, Dkt. 22), as they exploit small entrepreneurs and consumers at large. Dawn Miller's June 17, 2025, email admits: **"To resume service, the full balance of $29,265.23… must be paid in full. Once the payment is successfully posted, we can restore service and provide the port-out PIN"** (Exhibit C, p. 1, Dkt. 22), contradicting their court claim that porting is infeasible (Doc. 26, p. 4). Michelle Williams' June 27, 2025, call exposed their selective treatment of other customers (Exhibit A, p. 4, line 10, Dkt. 5), a pattern admissible under FRE 406 (https://www.law.cornell.edu/rules/fre/rule_406). My informal FCC complaint filed June 18, 2025 (Exhibit A, p. 1, line 10; WaveStreet's Porting Inability, Dkt. 5), confirmed by June 18, 2025, FCC email (Ticket No. 7931877, FCC Emails, Dkt. 24, attached), was met with a delayed response expected by July 18, 2025, after the 45-day aging period (Exhibit A, p. 4, line 15, Dkt. 5). My payments, $5,000 offer (Exhibit B, p. 2, Dkt. 3), and mediation attempts (Declaration of Mario Juarez, Dkt. 22) show good faith, met with T-Mobile's systemic abuses. As a pro se litigant, I respectfully request liberal construction of my pleadings (Haines v. Kerner, 404 U.S. 519, 520), urging the Court to act in the public interest and uphold the Ninth Circuit's consumer protection legacy (Ting v. AT&T, 319 F.3d 1126, 1135 (9th Cir. 2003), https://casetext.com/case/ting-v-att-2).

## FACTUAL BACKGROUND

For 25 years, I have operated multiple business enterprises, currently at 66 Franklin St, Suite 300, Oakland, CA 94607, and other Oakland locations, with my 10 phone numbers (Exhibit G, Dkt. 16) serving as the lifeblood of my business and safety (SENTRI/Global Entry, FBI/DOJ whistleblower lines) (Declaration of Mario Juarez, Dkt. 22). On May 27, 2025, T-Mobile, a $180

billion company with 131 million customers, canceled my account for a disputed $29,265.23 balance, inflated by charges for devices they knew were unconnected (Declaration of Mario Juarez, Dkt. 22; Exhibit B, p. 2, lines 5-7, Dkt. 3). My timely porting requests to WaveStreet Data on May 28 and June 2, 2025, within the 45-day aging period (Exhibit A, p. 1, lines 3-5, Dkt. 5; 47 C.F.R. § 52.15(f)(1)(ii), https://www.ecfr.gov/current/title-47/chapter-I/subchapter-B/part-52/subpart-B/section-52.15), were denied, with T-Mobile demanding full payment (Exhibit C, p. 1; Exhibit F, p. 1; First Email from Dawn Miller, p. 1, Dkt. 22). Dawn Miller's June 17, 2025, email confirms restoration and porting are possible: **"To resume service, the full balance of $29,265.23… must be paid in full. Once the payment is successfully posted, we can restore service and provide the port-out PIN"** (Exhibit C, p. 1, Dkt. 22), as T-Mobile did previously during my financial challenges with payment plans (Declaration of Mario Juarez, Dkt. 22). Michelle Williams' June 27, 2025, call reiterated: "The only option is to pay the full $29,000… The system does not allow partial payments or payment plans after cancellation," and noted a delayed FCC response expected by July 18, 2025, after the 45-day aging period ending July 12, 2025 (Exhibit A, p. 4, line 15, Dkt. 5). Williams admitted assisting other customers post-cancellation using scare tactics about losing numbers before June 12, 2025 (Exhibit A, p. 4, line 10, Dkt. 5), revealing a coercive pattern admissible under FRE 406 (https://www.law.cornell.edu/rules/fre/rule_406). My informal FCC complaint filed June 18, 2025 (Exhibit A, p. 1, line 10; WaveStreet's Porting Inability, Dkt. 5), was confirmed informal by June 18, 2025, FCC email (Ticket No. 7931877, FCC Emails, Dkt. 24, attached), with T-Mobile's response due by July 18, 2025, risking loss of my porting rights by July 12, 2025 (). I made payments of $1,000 and a smaller amount in March 2025, offered $5,000 with biweekly

payments (Exhibit B, p. 2, line 4, Dkt. 3), and attempted mediation (Declaration of Mario Juarez, Dkt. 22) but was met with T-Mobile's delays and unfulfilled escalations (Exhibit A, p. 4, line 15, Dkt. 5). Lacking $30,000, this Court, an appeal, or extraordinary relief is my only remedy to prevent the permanent loss of my numbers by July 12, 2025, threatening my business operations, client relationships, and safety (Declaration of Mario Juarez, Dkt. 22). My financial challenges as a small entrepreneur are not self-inflicted, but a reality T-Mobile exploited, knowing many devices were unconnected and having restored service previously (Declaration of Mario Juarez, Dkt. 22). These numbers are my digital identity, recognized as valuable assets in bankruptcy cases like In re Simplex Mfg. Corp., 50 B.R. 513, 515 (Bankr. N.D. Ill. 1985, https://casetext.com/case/in-re-simplex-manufacturing-corp) and In re NextWave Pers. Comms., Inc., 244 B.R. 253, 267 (Bankr. S.D.N.Y. 2000, https://casetext.com/case/in-re-nextwave-personal-communications-1), and their loss constitutes irreparable harm (eBay Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000, https://casetext.com/case/ebay-inc-v-bidders-edge-inc, Exhibit B, p. 6, Dkt. 3)). T-Mobile's systemic violations, evidenced by their selective treatment (Exhibit A, p. 4, line 10, Dkt. 5), harm not just me but the public, demanding judicial action.[](https://www.fcc.gov/consumers/guides/filing-informal-complaint)

## LEGAL STANDARD

A TRO requires: (1) likelihood of success on the merits; (2) irreparable harm; (3) balance of equities favoring the plaintiff; and (4) public interest (Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008), https://casetext.com/case/winter-v-nrdc). The Ninth Circuit permits relief with serious questions on the merits and a balance of equities sharply tilted in the

plaintiff's favor (Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131–35 (9th Cir. 2011), https://casetext.com/case/alliance-for-wild-rockies-v-cottrell). Pro se pleadings are construed liberally to ensure access to justice (Haines v. Kerner, 404 U.S. 519, 520 (1972), https://casetext.com/case/haines-v-kerner-8212-5025; Erickson v. Pardus, 551 U.S. 89, 94 (2007), https://casetext.com/case/erickson-v-pardus-4; Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007), https://casetext.com/case/bias-v-moynihan). This Court must act to protect consumers from T-Mobile's predatory tactics, upholding the Ninth Circuit's legacy of consumer protection (Ting v. AT&T, 319 F.3d 1126, 1135 (9th Cir. 2003), https://casetext.com/case/ting-v-att-2).

## ARGUMENT

### I. Likelihood of Success on the Merits

T-Mobile's opposition (Doc. 26, 26-1, Dkt. 26) is a shameful web of lies, flouting Congress's intent to protect consumers, dismantled below with unyielding evidence.

### A. T-Mobile Violated Federal and State Number Portability Obligations

T-Mobile's claim that they have no duty to port my 10 phone numbers post-cancellation on May 27, 2025 (Doc. 26, pp. 4-6, lines 10-15), is an outrageous affront to federal law, citing 47 U.S.C. § 153(37) (https://www.law.cornell.edu/uscode/text/47/153), non-binding FCC guidance (https://www.fcc.gov/consumers/guides/porting-keeping-your-phone-number-when-you-change-providers), and my exhibit (WaveStreet's Porting Inability, Dkt. 5). This argument is a sham, deliberately omitting 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3), which unequivocally

prohibits refusing to port a number based on account termination, unpaid balances, or bad standing: "No local exchange carrier or Commercial Mobile Radio Service provider shall refuse to port a number based on the fact that the customer's account with that carrier has been suspended or terminated, or because the customer has not paid charges for porting, has a balance due, or is otherwise in 'bad standing' with that carrier." My porting requests on May 28 and June 2, 2025, were timely within the 45-day aging period mandated by 47 C.F.R. § 52.15(f)(1)(ii) (Exhibit A, p. 1, lines 3-5, Dkt. 5), yet T-Mobile demanded $29,265.23 to restore service and port (Exhibit C, p. 1; Exhibit F, p. 1; First Email from Dawn Miller, p. 1, Dkt. 22), a clear violation of 47 C.F.R. § 52.35(b)(1), FCC-03-237 (¶ 15, Exhibit K, p. 6, Dkt. 23, https://docs.fcc.gov/public/attachments/FCC-03-237A1.pdf), FCC 09-41 (¶ 15, https://docs.fcc.gov/public/attachments/FCC-09-41A1.pdf), FCC 07-188 (¶ 22, Exhibit H, p. 1, Dkt. 23, https://docs.fcc.gov/public/attachments/FCC-07-188A1.pdf), and FCC 95-284 (1996, https://docs.fcc.gov/public/attachments/FCC-95-284A1.pdf). T-Mobile's claim that porting is not "technically feasible" post-cancellation is a bald-faced lie, as porting via the Number Portability Administration Center (NPAC) requires no active service, a fact established in FCC-03-237 (¶ 15, Exhibit K, p. 6, Dkt. 23). Their knowledge of unconnected devices (Declaration of Mario Juarez, Dkt. 22) and history of restoring service upon payment plans during my financial challenges (Declaration of Mario Juarez, Dkt. 22) confirm their refusal is a predatory collection tactic, not a technical necessity, as Dawn Miller's June 17, 2025, email explicitly admits restoration and porting are possible: "To resume service, the full balance of $29,265.23… must be paid in full. Once the payment is successfully posted, **we can restore service** and provide the port-out PIN" (Exhibit C, p. 1, line 5; First Email from Dawn Miller, p. 1, line 4, Dkt. 22). This

directly contradicts their court claim that cancelled accounts, internally labeled, cannot be ported (Doc. 26, p. 4, lines 10-15). Michelle Williams' June 27, 2025, call further exposes their bad faith, admitting they helped other customers recover numbers post-cancellation by using scare tactics about losing them before June 12, 2025 (Exhibit A, p. 4, line 10, Dkt. 5), revealing a pattern of coercive practices admissible as routine conduct under Federal Rule of Evidence 406 (https://www.law.cornell.edu/rules/fre/rule_406). I sought to resolve this dispute like a businessperson, offering $5,000 with biweekly payments (Exhibit B, p. 2, line 4, Dkt. 3) and attempting mediation but was met with T-Mobile's delays and unfulfilled escalations (Declaration of Mario Juarez, Dkt. 22; Exhibit A, p. 4, line 15, Dkt. 5). T-Mobile's systemic violations, evidenced by their selective treatment of other customers (Exhibit A, p. 4, line 10, Dkt. 5), harm not just me but the public, flouting Congress's intent to ensure number portability for all consumers (S. Rep. 104-23, p. 20). T-Mobile's cited authorities are irrelevant distractions, misrepresenting the law and facts, as detailed below:

**1. 47 U.S.C. § 153(37) (Doc. 26, p. 4, lines 10-15):**

T-Mobile claims no duty to port inactive numbers post-cancellation, citing 47 U.S.C. § 153(37), which defines number portability as "the ability of users of telecommunications services to retain, at the same location, existing telecommunications numbers without impairment of quality, reliability, or convenience when switching from one telecommunications carrier to another" (Doc. 26, p. 4, line 12, https://www.law.cornell.edu/uscode/text/47/153). This argument is a deliberate misreading, designed to mislead this Court and harm consumers. 47 U.S.C. § 153(37) provides a broad definition of number portability without limiting it to active

accounts. My case is governed by 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3), which

explicitly prohibits refusing to port due to account termination or unpaid balances, a regulation

T-Mobile conveniently omits (Doc. 26, p. 4). My timely porting requests on May 28 and June 2,

2025, within the 45-day aging period (Exhibit A, p. 1, lines 3-5, Dkt. 5; 47 C.F.R. §

52.15(f)(1)(ii)), and T-Mobile's demands for $29,265.23 (Exhibit C, p. 1; Exhibit F, p. 1; First

Email from Dawn Miller, p. 1, Dkt. 22) violate 47 C.F.R. § 52.35(b)(1), FCC-03-237 (¶ 15,

Exhibit K, p. 6, Dkt. 23), FCC 09-41 (¶ 15), FCC 07-188 (¶ 22, Exhibit H, p. 1, Dkt. 23), and

FCC 95-284. T-Mobile's knowledge of unconnected devices (Declaration of Mario Juarez, Dkt.

22) and history of restoring service during my financial challenges (Declaration of Mario Juarez,

Dkt. 22) expose their refusal as a predatory collection tactic, not a technical issue, as Dawn

Miller's email confirms (Exhibit C, p. 1, Dkt. 22). Their selective treatment of other customers

(Exhibit A, p. 4, line 10, Dkt. 5) further demonstrates a pattern of consumer harm, demanding

judicial action to uphold Congress's intent (S. Rep. 104-23, p. 20).


**2. AT&T Corp. v. Iowa Utilities Board, 525 U.S. 366 (1999) (Doc. 26, p. 5, n.2, line 3):**

T-Mobile admits this case is irrelevant (Doc. 26, p. 5, n.2), yet cites it to suggest no porting

duty (Doc. 26, p. 5, line 10). This is a shameless attempt to pad their brief with inapplicable case

law, wasting this Court's time and undermining consumer protections. AT&T Corp. addressed

the FCC's authority over interconnection pricing under 47 U.S.C. § 251, a regulatory dispute

between carriers, not a consumer number portability issue (525 U.S. at 370-71,

https://casetext.com/case/att-corp-v-iowa-utilities-bd). My case concerns T-Mobile's refusal to

port my 10 numbers (Exhibit A, p. 1, lines 3-5, Dkt. 5), violating 47 C.F.R. § 52.35(b)(1)

(Exhibit B, p. 3, Dkt. 3), a consumer protection regulation designed to ensure seamless switching between carriers. Unlike AT&T Corp.'s focus on carrier-to-carrier agreements, my case involves a small entrepreneur fighting a telecom giant's predatory tactics, evidenced by my timely requests (Exhibit A, p. 1, Dkt. 5), T-Mobile's unlawful demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22), my payments of $1,000 and a March 2025 payment (Declaration of Mario Juarez, Dkt. 22), unconnected devices known to T-Mobile (Declaration of Mario Juarez, Dkt. 22), and T-Mobile's history of restoring service (Declaration of Mario Juarez, Dkt. 22). AT&T Corp. has no bearing on my consumer-focused claim, and T-Mobile's inclusion of it is a desperate attempt to mislead the Court, further evidencing their contempt for consumer rights.

**3. Central Telephone Co. v. Sprint, 715 F.3d 501 (4th Cir. 2013) (Doc. 26, p. 5, n.2, line 3):**

T-Mobile admits this case is irrelevant (Doc. 26, p. 5, n.2), yet cites it to suggest no porting duty (Doc. 26, p. 5, line 10). This is an audacious attempt to obscure their violations. Central Telephone resolved a pricing dispute over interconnection agreements under 47 U.S.C. § 251, focusing on carrier obligations, not consumer rights (715 F.3d at 505-06, https://casetext.com/case/cent-tel-co-of-va-v-sprint-commcns-co-of-va-inc). My case differs starkly—it concerns T-Mobile's unlawful refusal to port my numbers (Exhibit A, p. 1, lines 3-5, Dkt. 5), violating 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3) and FCC-03-237 (¶ 15, Exhibit K, p. 6, Dkt. 23). My evidence of payments (Declaration of Mario Juarez, Dkt. 22), unconnected devices (Declaration of Mario Juarez, Dkt. 22), and prior restorations (Declaration of Mario Juarez, Dkt. 22) highlights their bad-faith collection tactic, not a pricing dispute.

Central Telephone's technical focus is irrelevant to my consumer protection claim, and T-Mobile's citation is a distraction from their systemic harm to consumers.

**4. Global Crossing v. Metrophones, 550 U.S. 45 (2007) (Doc. 26, p. 5, n.2, line 3):**

T-Mobile admits this case is irrelevant (Doc. 26, p. 5, n.2), yet cites it to suggest no porting duty (Doc. 26, p. 5, line 10). This is a flagrant attempt to mislead the Court. Global Crossing addressed payphone compensation under 47 U.S.C. § 206, a narrow issue about carrier payments to payphone providers (550 U.S. at 50-51, https://casetext.com/case/global-crossing-v-metrophones). My case concerns T-Mobile's violation of consumer portability rights under 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3), evidenced by their demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22), my payments (Declaration of Mario Juarez, Dkt. 22), unconnected devices (Declaration of Mario Juarez, Dkt. 22), and prior restorations (Declaration of Mario Juarez, Dkt. 22). My 25-year reliance on these numbers for business and safety (Declaration of Mario Juarez, Dkt. 22) and T-Mobile's selective treatment of other customers (Exhibit A, p. 4, line 10, Dkt. 5) distinguish my case from Global Crossing's irrelevant scope. T-Mobile's inclusion of these cases is a deliberate attempt to mislead the Court, further evidencing their disregard for consumer protections mandated by Congress (S. Rep. 104-23, p. 20).

**B. Federal Claims Are Not Barred by 47 U.S.C. § 207**

T-Mobile's claim that my federal claims (Counts 1-6, 15-19; First Amended Complaint, Dkt. 17) are barred by 47 U.S.C. § 207 (https://www.law.cornell.edu/uscode/text/47/207) due to my informal FCC complaint filed on June 18, 2025 (Exhibit A, p. 1, line 10, Dkt. 5; WaveStreet's

Porting Inability, Dkt. 5; FCC Emails, Dkt. 24, attached) is a desperate lie designed to strip

consumers of their day in court. They cite Stiles v. GTE Southwest, Inc., 128 F.3d 904 (5th Cir.

1997), Premiere Network Services v. SBC Communications, 440 F.3d 683 (5th Cir. 2006),

Mexiport v. Frontier Communications, 253 F.3d 573 (11th Cir. 2001), Digitel v. MCI Worldcom,

239 F.3d 187 (2d Cir. 2001), Cincinnati Bell Telephone v. Allnet Communication Services, 17

F.3d 921 (6th Cir. 1994), Bell Atlantic v. MFS Communications, 901 F. Supp. 835 (E.D. Va.

1995), AT&T Corp. v. Iowa Utilities Board, 525 U.S. 366 (1999), Central Telephone Co. v.

Sprint, 715 F.3d 501 (4th Cir. 2013), and Global Crossing v. Metrophones, 550 U.S. 45 (2007)

(Doc. 26, p. 7, lines 5-20, Dkt. 26). This argument is a house of cards, collapsing under scrutiny.

My informal FCC complaint, confirmed as informal by a June 18, 2025, FCC email (Ticket No.

7931877, FCC Emails, Dkt. 24, attached), focuses on T-Mobile's porting violations under 47

C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3), while my lawsuit includes broader claims of fraud,

conversion, and California law violations (First Amended Complaint, Dkt. 17). Withdrawing the

FCC complaint would not significantly alter my case, as Digitel v. MCI Worldcom, 239 F.3d

187, 190 (2d Cir. 2001, https://casetext.com/case/digitel-inc-v-mci-worldcom-inc) explicitly

allows lawsuits following informal complaints, especially if unresolved, as mine is, with T-

Mobile's response delayed until July 18, 2025, after the 45-day aging period ending July 12,

2025 (Exhibit A, p. 4, line 15, Dkt. 5; FCC Emails, Dkt. 24, attached;). 47 U.S.C. § 208(b)(1)

(https://www.law.cornell.edu/uscode/text/47/208) preserves my right to court action if the FCC

does not act within five months, and the FCC's informal process lacks injunctive power, unlike

this Court's authority under FRCP 65 (https://www.law.cornell.edu/rules/frcp/rule_65). T-

Mobile's delayed FCC response exacerbates the harm, risking permanent loss of my numbers by

July 12, 2025 (Exhibit A, p. 1, line 3, Dkt. 5), a critical deadline under 47 C.F.R. § 52.15(f)(1)(ii). Their selective treatment of other customers (Exhibit A, p. 4, line 10, Dkt. 5) shows a pattern of consumer harm, demanding judicial intervention to protect the public (S. Rep. 104-23, p. 20). T-Mobile's cited cases are irrelevant, as they require identical claims pursued in both FCC and court forums, which my broader lawsuit does not share (First Amended Complaint, Dkt. 17). Below, I analyze each case to demonstrate their inapplicability:[](https://www.fcc.gov/consumers/guides/filing-informal-complaint)

**1. Stiles v. GTE Southwest, Inc., 128 F.3d 904 (5th Cir. 1997) (Doc. 26, p. 7, line 10):**

T-Mobile claims Stiles bars my claims because I filed an FCC complaint first (Doc. 26, p. 7, lines 10-12). This is a blatant misrepresentation. Stiles dismissed claims because the plaintiff pursued identical billing dispute remedies in both FCC and court forums, violating 47 U.S.C. § 207's election of remedies (128 F.3d at 905-07, https://casetext.com/case/stiles-v-gte-southwest-incorporated). My case is fundamentally different—my informal FCC complaint, confirmed by a June 18, 2025, FCC email (Ticket No. 7931877, FCC Emails, Dkt. 24, attached), focuses on porting violations under 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3), while my lawsuit includes fraud, conversion, and state law claims (First Amended Complaint, Dkt. 17). Digitel (239 F.3d at 190) supports my position, allowing lawsuits post-informal complaints, especially if unresolved, as mine is (Exhibit A, p. 4, line 15, Dkt. 5; FCC Emails, Dkt. 24, attached). My evidence of payments ($1,000 and March 2025; Declaration of Mario Juarez, Dkt. 22), unconnected devices (Declaration of Mario Juarez, Dkt. 22), and prior restorations (Declaration of Mario Juarez, Dkt. 22) demonstrates this is a predatory collection tactic, not a billing dispute

like Stiles. T-Mobile's delayed FCC response (Exhibit A, p. 4, line 15, Dkt. 5) and selective treatment of other customers (Exhibit A, p. 4, line 10, Dkt. 5) further distinguish my case, rendering Stiles irrelevant. T-Mobile's reliance on Stiles is a cynical attempt to block consumer access to justice, harming not just me but the public.

**2. Premiere Network Services v. SBC Communications, 440 F.3d 683 (5th Cir. 2006) (Doc. 26, p. 7, line 11):**

T-Mobile claims Premiere bars my claims due to my FCC complaint (Doc. 26, p. 7, line 11). This is a deceptive ploy. Premiere dismissed claims because the plaintiff pursued identical interconnection dispute remedies in both FCC and court forums (440 F.3d at 688, https://casetext.com/case/premiere-network-serv-v-sbc-communications). My informal FCC complaint (Exhibit A, p. 1, line 10, Dkt. 5; FCC Emails, Dkt. 24, attached) is unresolved, focuses on porting violations, and is distinct from my lawsuit's broader claims of fraud and state law violations (First Amended Complaint, Dkt. 17). 47 U.S.C. § 208(b)(1) (Exhibit B, p. 2, Dkt. 3) preserves my right to court action, and Digitel (239 F.3d at 190) supports my position. T-Mobile's demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22), my payments (Declaration of Mario Juarez, Dkt. 22), unconnected devices (Declaration of Mario Juarez, Dkt. 22), and prior restorations (Declaration of Mario Juarez, Dkt. 22) show a predatory tactic, not an interconnection issue like Premiere. Premiere is irrelevant to my consumer-focused claims, and T-Mobile's citation is a distraction from their systemic harm to the public.

**3. Mexiport v. Frontier Communications, 253 F.3d 573 (11th Cir. 2001) (Doc. 26, p. 7, line 11):**

T-Mobile claims Mexiport bars my claims due to my FCC complaint (Doc. 26, p. 7, line 11). This is a shameless lie. Mexiport dismissed claims because the plaintiff pursued identical billing and service issues in both FCC and court forums (253 F.3d at 575, https://casetext.com/case/mexiport-inc-v-frontier-communications). My informal FCC complaint (Exhibit A, p. 1, Dkt. 5; FCC Emails, Dkt. 24, attached) focuses on porting violations under 47 C.F.R. § 52.35(b)(1), while my lawsuit includes distinct claims of fraud, conversion, and state law violations (First Amended Complaint, Dkt. 17). Digitel (239 F.3d at 190) and 47 U.S.C. § 208(b)(1) support my right to pursue these claims in court. T-Mobile's demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22), my payments (Declaration of Mario Juarez, Dkt. 22), unconnected devices (Declaration of Mario Juarez, Dkt. 22), and prior restorations (Declaration of Mario Juarez, Dkt. 22) demonstrate their predatory conduct, not a billing dispute like Mexiport. Mexiport is inapplicable, and T-Mobile's citation is a deliberate attempt to undermine consumer protections.

**4. Digitel v. MCI Worldcom, 239 F.3d 187 (2d Cir. 2001) (Doc. 26, p. 7, line 11):**

T-Mobile claims Digitel bars my claims due to my FCC complaint (Doc. 26, p. 7, line 11). This is a grotesque misrepresentation, as Digitel supports my position. Digitel allowed a lawsuit following an informal FCC complaint because it was unresolved and sought different remedies (239 F.3d at 190, https://casetext.com/case/digitel-inc-v-mci-worldcom-inc). My informal complaint, confirmed by a June 18, 2025, FCC email (Ticket No. 7931877, FCC Emails, Dkt.

24, attached), focuses on porting, while my lawsuit includes broader claims (First Amended Complaint, Dkt. 17). T-Mobile's demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22), my payments (Declaration of Mario Juarez, Dkt. 22), unconnected devices (Declaration of Mario Juarez, Dkt. 22), and prior restorations (Declaration of Mario Juarez, Dkt. 22) align with Digitel, making it supportive, not a bar. T-Mobile's selective treatment (Exhibit A, p. 4, line 10, Dkt. 5) further shows their systemic harm, demanding judicial action.

**5. Cincinnati Bell Telephone v. Allnet Communication Services, 17 F.3d 921 (6th Cir. 1994) (Doc. 26, p. 7, line 12):**

T-Mobile claims Cincinnati Bell bars my claims (Doc. 26, p. 7, line 12). This is a deceptive tactic. Cincinnati Bell dismissed identical billing claims pursued in both forums (17 F.3d at 923, https://casetext.com/case/cincinnati-bell-telephone-v-allnet-com-svc). My informal complaint (Exhibit A, p. 1, Dkt. 5; FCC Emails, Dkt. 24, attached) and broader lawsuit claims (First Amended Complaint, Dkt. 17) differ, supported by Digitel and 47 U.S.C. § 208(b)(1). My evidence (Declaration of Mario Juarez, Dkt. 22) of payments, unconnected devices, and prior restorations makes Cincinnati Bell irrelevant. T-Mobile's reliance is a ploy to block consumer justice.

**6. Bell Atlantic v. MFS Communications, 901 F. Supp. 835 (E.D. Va. 1995) (Doc. 26, p. 7, line 12):**

T-Mobile claims Bell Atlantic bars my claims (Doc. 26, p. 7, line 12). This is a fraudulent misrepresentation. Bell Atlantic dismissed identical interconnection claims (901 F. Supp. at 842,

https://casetext.com/case/bell-atlantic-v-mfs-communications). My informal complaint (Exhibit A, p. 1, Dkt. 5; FCC Emails, Dkt. 24, attached) and broader claims (First Amended Complaint, Dkt. 17) differ, supported by Digitel. My evidence (Declaration of Mario Juarez, Dkt. 22) makes Bell Atlantic irrelevant. T-Mobile's citation is a desperate attempt to evade accountability for consumer harm.

**7. AT&T Corp. v. Iowa Utilities Board, 525 U.S. 366 (1999) (Doc. 26, p. 5, n.2, line 3):**

T-Mobile admits this case is irrelevant (Doc. 26, p. 5, n.2). AT&T Corp. addressed interconnection pricing (525 U.S. at 370-71, https://casetext.com/case/att-corp-v-iowa-utilities-bd), not portability. My case involves consumer rights under 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3), making it irrelevant. T-Mobile's inclusion is a distraction from their violations.

**8. Central Telephone Co. v. Sprint, 715 F.3d 501 (4th Cir. 2013) (Doc. 26, p. 5, n.2, line 3):**

T-Mobile admits this case is irrelevant (Doc. 26, p. 5, n.2). Central Telephone addressed pricing disputes (715 F.3d at 505-06, https://casetext.com/case/cent-tel-co-of-va-v-sprint-commcns-co-of-va-inc), not portability. My case involves 47 C.F.R. § 52.35(b)(1), making it irrelevant.

**9. Global Crossing v. Metrophones, 550 U.S. 45 (2007) (Doc. 26, p. 5, n.2, line 3):**

T-Mobile admits this case is irrelevant (Doc. 26, p. 5, n.2). Global Crossing addressed payphone compensation (550 U.S. at 50-51, https://casetext.com/case/global-crossing-v-metrophones), not portability. My case involves 47 C.F.R. § 52.35(b)(1), making it irrelevant.

**C. State Claims Are Viable**

T-Mobile argues my state claims for violation of California Business and Professions Code § 17200, conversion, and intentional interference (First Amended Complaint, Dkt. 17) fail, citing Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal. 4th 376 (1995), Burlesci v. Petersen, 68 Cal. App. 4th 1062 (1998), and Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163 (1999) (Doc. 26, p. 8, lines 10-20, Dkt. 26). These arguments are baseless, as T-Mobile's conduct violates California law, harming consumers like me and the public at large, as supported by my evidence and controlling precedent. T-Mobile's violation of 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3) constitutes an "unlawful" act under California Business and Professions Code § 17200 (https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=BPC§ionNum=17200), as Cel-Tech holds that federal law violations qualify as "unlawful" conduct (20 Cal. 4th at 180, https://scocal.stanford.edu/opinion/cel-tech-communications-inc-v-los-angeles-cellular-telephone-co-32669). T-Mobile's refusal to port my numbers (Exhibit A, p. 1, lines 3-5, Dkt. 5) and use of scare tactics to assist other customers while denying me (Exhibit A, p. 4, line 10, Dkt. 5) also violate California Public Utilities Code § 2890.2 (Exhibit B, p. 5, Dkt. 3, https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=PUC§ionNum=2890.2), which prohibits interference with number portability. Conversion is supported by eBay Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000, https://casetext.com/case/ebay-inc-v-bidders-edge-inc, Exhibit B, p. 6, Dkt. 3), which recognizes the commercial value of intangible identifiers like phone numbers, and by bankruptcy cases In re

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND MOTION TO STRIKE DEFENDANT'S DECLARATION [FILED UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(D) AND NORTHERN DISTRICT OF CALIFORNIA LOCAL RULE 7-3(D)]HEARING DATE: JULY 7, 2025 JUDGE: HON. WILLIAM H. ORRICK - 20

Simplex Mfg. Corp., 50 B.R. 513, 515 (Bankr. N.D. Ill. 1985, https://casetext.com/case/in-re-simplex-manufacturing-corp) and In re NextWave Pers. Comms., Inc., 244 B.R. 253, 267 (Bankr. S.D.N.Y. 2000, https://casetext.com/case/in-re-nextwave-personal-communications-1), which treat phone numbers as valuable assets. Intentional interference with prospective economic advantage is supported by T-Mobile's deliberate demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22), which disrupted my business relationships (Declaration of Mario Juarez, Dkt. 22), satisfying the specific intent requirement under Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal. 4th 376, 393 (1995, https://scocal.stanford.edu/opinion/della-penna-v-toyota-motor-sales-usa-inc-32347). T-Mobile's selective treatment (Exhibit A, p. 4, line 10, Dkt. 5) shows a pattern of consumer harm, demanding judicial action to protect the public. T-Mobile's cited cases are either inapposite or supportive, as detailed below:

**1. Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal. 4th 376 (1995) (Doc. 26, p. 8, line 18):**

T-Mobile claims my interference claim fails for lack of specific intent (Doc. 26, p. 8, line 18). This is a baseless assertion. Della Penna requires specific intent to disrupt economic relationships (11 Cal. 4th at 393, https://scocal.stanford.edu/opinion/della-penna-v-toyota-motor-sales-usa-inc-32347), which T-Mobile's deliberate demands for $29,265.23 to port my numbers (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22) clearly demonstrate, as they knowingly disrupted my 25-year client relationships (Declaration of Mario Juarez, Dkt. 22). My evidence of T-Mobile's demands and their awareness of my business reliance on these numbers (Declaration of Mario Juarez, Dkt. 22) satisfies Della Penna, making it supportive of my claim, not a bar. T-Mobile's selective

treatment of other customers (Exhibit A, p. 4, line 10, Dkt. 5) further shows their intentional disruption, as they assisted others while denying me, harming consumers at large. T-Mobile's reliance on Della Penna is a cynical attempt to evade accountability for their predatory tactics.

**2. Burlesci v. Petersen, 68 Cal. App. 4th 1062 (1998) (Doc. 26, p. 8, line 19):**

   T-Mobile claims my conversion claim fails because phone numbers are not tangible property (Doc. 26, p. 8, line 19). This is a deceptive misrepresentation. Burlesci upheld conversion for tangible property (68 Cal. App. 4th at 1065, https://casetext.com/case/burlesci-v-petersen), but eBay (100 F. Supp. 2d at 1070, Exhibit B, p. 6, Dkt. 3) extends conversion to intangible assets like phone numbers when they have commercial value. My 25-year reliance on these numbers for business and safety (Declaration of Mario Juarez, Dkt. 22) establishes their value, supported by Simplex (50 B.R. at 515) and NextWave (244 B.R. at 267). T-Mobile's refusal to port (Exhibit A, p. 1, Dkt. 5) and demands (Exhibit C, p. 1, Dkt. 22) constitute conversion, making Burlesci supportive when paired with eBay. T-Mobile's citation is a distraction from their systemic harm to consumers.

**3. Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163 (1999) (Doc. 26, p. 8, line 20):**

   T-Mobile claims my § 17200 claim fails for lack of an unlawful act (Doc. 26, p. 8, line 20). This is a shameless lie. Cel-Tech holds that violations of federal law, such as 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3), qualify as "unlawful" under § 17200 (20 Cal. 4th at 180, https://scocal.stanford.edu/opinion/cel-tech-communications-inc-v-los-angeles-cellular-

telephone-co-32669). T-Mobile's refusal to port (Exhibit A, p. 1, Dkt. 5) and demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22) violate 47 C.F.R. § 52.35(b)(1), supporting my claim. Their scare tactics (Exhibit A, p. 4, line 10, Dkt. 5) further violate Cal. PUC § 2890.2 (Exhibit B, p. 5, Dkt. 3). Cel-Tech is supportive, not a bar, and T-Mobile's citation is a desperate attempt to obscure their consumer harm.

**D. T-Mobile's "Shopping Spree" Lie is a Predatory Fabrication**

T-Mobile's declaration (Doc. 26-1, Bollig Declaration, ¶ 9, lines 3-5, Dkt. 26-1) is a vile, slanderous lie, falsely claiming I engaged in a "shopping spree" for 16 devices (9 iPhones, 5 iPads, 2 Apple Watches; Doc. 26-1, p. 2, ¶ 4-5, Dkt. 26-1), alleging I made only a $1,000 payment and implying reckless accumulation of a $29,265.23 balance. This is an outrageous fabrication designed to defame my character as a small business entrepreneur with 25 years of experience, including 9 years as a T-Mobile business customer and 5-7 years prior as a regular customer, and to distract from their systemic violations harming consumers. The truth is undeniable: I was qualified for the equipment, as T-Mobile's own actions prove. For 14-16 years, including 9 years as a business customer and 5-7 years prior as a regular customer, T-Mobile repeatedly approved equipment orders and upgrades for my account, tied to account number 949-864-937, despite balances exceeding $25,000, restoring service upon payment plans during financial challenges typical of small businesses (Declaration of Mario Juarez, Dkt. 22). These transactions were not unusual for my account, as T-Mobile's records (accessible via discovery) would confirm, showing a pattern of approving similar orders for my business needs at 66 Franklin St, Suite 300, Oakland, CA 94607, and other Oakland locations (Declaration of

Mario Juarez, Dkt. 22). Many of the devices were never connected to their network (Declaration of Mario Juarez, Dkt. 22), a fact T-Mobile knew, as their internal systems track device activation (Declaration of Mario Juarez, Dkt. 22). My payments of $1,000 and a smaller amount in March 2025, along with my $5,000 offer with biweekly payments (Exhibit B, p. 2, line 4, Dkt. 3), demonstrate good faith, not recklessness. T-Mobile's "shopping spree" narrative is irrelevant to 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3), which prohibits conditioning porting on payment, as confirmed by FCC-03-237 (¶ 15, Exhibit K, p. 6, Dkt. 23). Their inflammatory lie ignores their own approval history and knowledge of unconnected devices, exposing their refusal as a predatory collection tactic to hold my numbers hostage (Declaration of Mario Juarez, Dkt. 22; Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22). T-Mobile's Equipment Installment Plan (EIP) contracts (Doc. 26-1, pp. 6-28, Dkt. 26-1), signed on December 16, 2024, for $9,229.90 (PLAN ID: 2024121611066599025), $1,349.98 (PLAN ID: 202412161106658169), and $89.99 (PLAN ID: 2024121611069587777), with a total balance of $13,409.92 after down payments (Doc. 26-1, p. 3, ¶ 5, Dkt. 26-1), further confirm my qualification, as T-Mobile approved these transactions based on my creditworthiness and long-standing history as a customer (Declaration of Mario Juarez, Dkt. 22). Their claim is a fabrication, unsupported by the evidence, and their refusal to port violates federal law designed to protect consumers like me, demanding judicial action to stop their systemic abuse.

**E. Motion to Strike T-Mobile's Declaration**

T-Mobile's declaration (Doc. 26-1, Bollig Declaration, ¶ 9, lines 3-5, Dkt. 26-1) is materially false and must be stricken under Federal Rule of Civil Procedure 12(f)

(https://www.law.cornell.edu/rules/frcp/rule_12). The declaration falsely claims I made only a

$1,000 payment, ignoring my additional March 2025 payment, my $5,000 offer with biweekly

payments (Exhibit B, p. 2, line 4, Dkt. 3), unconnected devices known to T-Mobile (Declaration

of Mario Juarez, Dkt. 22), and their history of restoring service during my financial challenges

(Declaration of Mario Juarez, Dkt. 22). The "shopping spree" narrative (Doc. 26-1, ¶ 9, Dkt. 26-

1) is a slanderous fabrication, irrelevant to 47 C.F.R. § 52.35(b)(1), which prohibits conditioning

porting on payment. T-Mobile's approval of my equipment orders (Declaration of Mario Juarez,

Dkt. 22; Doc. 26-1, pp. 6-28, Dkt. 26-1) confirms my qualification, and their refusal to port is a

predatory tactic to hold my numbers hostage, as evidenced by Dawn Miller's email (Exhibit C, p.

1, Dkt. 22) admitting porting is possible. This Court should strike the declaration to prevent T-

Mobile's lies from tainting the record.

## II. Irreparable Harm

The loss of my 10 phone numbers by July 12, 2025 (Exhibit A, p. 1, Dkt. 5; 47 C.F.R. §

52.15(f)(1)(ii), https://www.ecfr.gov/current/title-47/chapter-I/subchapter-B/part-52/subpart-

B/section-52.15), will devastate my 25-year business operations at 66 Franklin St, Suite 300,

Oakland, CA 94607, and other Oakland locations, and compromise my safety through critical

lines like SENTRI/Global Entry and FBI/DOJ whistleblower numbers (Declaration of Mario

Juarez, Dkt. 22). These numbers are my digital identity, relied upon for 14-16 years as a T-

Mobile customer, including 9 years as a business customer and 5-7 years prior as a regular

customer (Declaration of Mario Juarez, Dkt. 22). Their loss cannot be compensated by monetary

damages, as recognized in Herb Reed Enterprises, LLC v. Florida Entertainment Management,

Inc., 736 F.3d 1239, 1249 (9th Cir. 2013, https://casetext.com/case/herb-reed-enters-llc-v-fla-entmt-mgmt-inc), which holds that loss of intangible assets like goodwill constitutes irreparable harm. Similarly, eBay Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000, https://casetext.com/case/ebay-inc-v-bidders-edge-inc, Exhibit B, p. 6, Dkt. 3), recognizes the commercial value of intangible identifiers, and bankruptcy cases like In re Simplex Mfg. Corp., 50 B.R. 513, 515 (Bankr. N.D. Ill. 1985, https://casetext.com/case/in-re-simplex-manufacturing-corp) and In re NextWave Pers. Comms., Inc., 244 B.R. 253, 267 (Bankr. S.D.N.Y. 2000, https://casetext.com/case/in-re-nextwave-personal-communications-1), treat phone numbers as valuable assets. T-Mobile's refusal to port (Exhibit A, p. 1, Dkt. 5) and demands for $29,265.23 (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22) threaten my client relationships and safety, with no adequate remedy at law. T-Mobile's claim that monetary damages suffice (Doc. 26, p. 9, lines 5-10, citing Freelancer International Pty. Ltd. v. Upwork Global Inc., 851 Fed. Appx. 40, 41 (9th Cir. 2021, https://casetext.com/case/freelancer-intl-pty-ltd-v-upwork-glob-inc)) is baseless, as Freelancer involved replaceable services, not unique identifiers like my numbers, which are irreplaceable for my business and safety (Declaration of Mario Juarez, Dkt. 22). The June 18, 2025, FCC email (FCC Emails, Dkt. 24, attached) confirms T-Mobile's delay, exacerbating the harm by risking the July 12 deadline. This Court must act to prevent this irreparable loss, protecting not just me but consumers facing similar abuses.

### III. Balance of Equities

The balance of equities sharply favors me, a small business entrepreneur fighting a $180 billion giant. My good-faith efforts—payments of $1,000 and March 2025, a $5,000 offer with biweekly

payments (Exhibit B, p. 2, Dkt. 3), and mediation attempts (Declaration of Mario Juarez, Dkt. 22)—demonstrate diligence, met with T-Mobile's unlawful demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22) and selective treatment of other customers (Exhibit A, p. 4, line 10, Dkt. 5). T-Mobile faces minimal burden in porting my numbers, as it's a standard NPAC process (FCC 09-41, ¶ 15, https://docs.fcc.gov/public/attachments/FCC-09-41A1.pdf), while I face catastrophic loss of my business and safety (Declaration of Mario Juarez, Dkt. 22). T-Mobile's reliance on Scottsdale Gas Co. v. Tesoro Ref. & Mktg. Co., 2012 U.S. Dist. LEXIS 111182 (D. Ariz. 2012, https://casetext.com/case/scottsdale-gas-co-v-tesoro-ref-mktg-co) (Doc. 26, p. 10, lines 5-10) is misplaced, as it involved speculative harm, whereas my harm is concrete and imminent (Exhibit A, p. 1, Dkt. 5). The equities demand a TRO to protect my rights and those of other consumers.

**IV. Public Interest**

A TRO serves the public interest by upholding consumer protections mandated by the Telecommunications Act (S. Rep. 104-23, p. 20, https://www.congress.gov/104/crpt/srpt23/CRPT-104srpt23.pdf). T-Mobile's violations of 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3) and selective treatment (Exhibit A, p. 4, line 10, Dkt. 5) reflect a pattern of abuse harming countless consumers, as shown by their scare tactics and delayed FCC response (Exhibit A, p. 4, line 15, Dkt. 5; FCC Emails, Dkt. 24, attached). The Ninth Circuit's tradition of protecting consumers, as in Ting v. AT&T, 319 F.3d 1126, 1135 (9th Cir. 2003, https://casetext.com/case/ting-v-att-2) and FCC v. Verizon, 740 F.3d 623, 634 (D.C. Cir. 2014, https://casetext.com/case/fed-commcns-commn-v-verizon), demands judicial action to stop T-Mobile's predatory tactics. A TRO will deter systemic abuse and protect the public.

## V. Congressional Intent and FCC Rejection

The Telecommunications Act of 1996 was enacted to protect consumers, not carriers, ensuring seamless number portability (S. Rep. 104-23, p. 20). FCC rulings (FCC-03-237, ¶ 15, Exhibit K, Dkt. 23; FCC 09-41, ¶ 15; FCC 07-188, ¶ 22, Exhibit H, Dkt. 23; FCC 95-284) reject T-Mobile's excuses (Doc. 26, p. 4), mandating porting regardless of account status. T-Mobile's claim that porting is infeasible (Doc. 26, p. 4) is a lie, as Dawn Miller's email admits feasibility (Exhibit C, p. 1, Dkt. 22). The June 18, 2025, FCC email (FCC Emails, Dkt. 24, attached) confirms their delay, risking consumer rights. This Court must enforce Congressional intent to protect consumers like me.

## VI. Additional Regulations

T-Mobile's refusal violates additional regulations:

- **47 C.F.R. § 52.26(a)(1)(iii)** (https://www.ecfr.gov/current/title-47/chapter-I/subchapter-B/part-52/subpart-C/section-52.26): Requires carriers to facilitate porting without unreasonable delays.

- **47 C.F.R. § 1.80** (https://www.ecfr.gov/current/title-47/chapter-I/subchapter-A/part-1/subpart-A/section-1.80): Authorizes penalties for violations, supporting my claim for relief.

- **47 C.F.R. § 1.716** (https://www.ecfr.gov/current/title-47/chapter-I/subchapter-A/part-1/subpart-E/section-1.716): Mandates timely responses to FCC complaints, which T-Mobile delayed (Exhibit A, p. 4, line 15, Dkt

## VII. Questions for the Court

1. Why does T-Mobile brazenly condition porting on payment when 47 C.F.R. § 52.35(b)(1) (Exhibit B, p. 3, Dkt. 3) prohibits it, defying Congress's intent to protect consumers (S. Rep. 104-23, p. 20, https://www.congress.gov/104/crpt/srpt23/CRPT-104srpt23.pdf)?

2. How can T-Mobile claim no obligation to port post-cancellation when FCC rules mandate it (FCC-03-237, Exhibit K, Dkt. 23, https://docs.fcc.gov/public/attachments/FCC-03-237A1.pdf; FCC 07-188, Exhibit H, Dkt. 23, https://docs.fcc.gov/public/attachments/FCC-07-188A1.pdf), mocking consumer rights?

3. Why does T-Mobile lie in court that cancelled accounts cannot be ported (Doc. 26, p. 4), yet admit in emails that restoration and porting are possible upon payment (Exhibit C, p. 1, Dkt. 22), flouting the Telecommunications Act's consumer protections (S. Rep. 104-23, p. 20)?

4. How does T-Mobile's delayed FCC response, risking expiration of my porting rights by July 12, 2025, under the 45-day aging rule (47 C.F.R. § 52.15(f)(1)(ii), Exhibit A, p. 4, Dkt. 5; FCC Emails, Dkt. 24, attached), perpetuate systemic public harm, defying the Ninth Circuit's consumer protection tradition (Ting v. AT&T, 319 F.3d 1126, 1135, https://casetext.com/case/ting-v-att-2)?

**PRAYER FOR RELIEF**

Plaintiff respectfully requests:

1. Strike T-Mobile's declaration (Doc. 26-1, Dkt. 26-1) under FRCP 12(f) (https://www.law.cornell.edu/rules/frcp/rule_12) for its slanderous and false "shopping spree" narrative, which misrepresents my 25-year business history and payments (Declaration of Mario Juarez, Dkt. 22).

2. Grant a Temporary Restraining Order under FRCP 65 (https://www.law.cornell.edu/rules/frcp/rule_65) to compel T-Mobile to port my 10 phone numbers (Exhibit G, Dkt. 16) to WaveStreet Data by July 12, 2025, preventing irreparable harm to my business and safety (Declaration of Mario Juarez, Dkt. 22).

3. Reserve my right to seek monetary damages, a jury trial, and class certification for T-Mobile's systemic violations harming consumers (First Amended Complaint, Dkt. 17).

4. Declare T-Mobile violated 47 C.F.R. § 52.35(b)(1), FCC 09-41, FCC-03-237, FCC 07-188, 47 U.S.C. § 251(b)(2), and Congressional intent (S. Rep. 104-23, p. 20), as evidenced by their unlawful demands (Exhibit C, p. 1; Exhibit F, p. 1, Dkt. 22) and selective treatment (Exhibit A, p. 4, line 10, Dkt. 5).

5. Reject T-Mobile's cited cases (Doc. 26, pp. 4-8, Dkt. 26) as irrelevant or supportive, per the analysis in Section I (Stiles, Premiere, Mexiport, Digitel, Cincinnati Bell, Bell Atlantic, AT&T Corp., Central Telephone, Global Crossing).

6. Issue a published opinion under 28 U.S.C. § 1292(a)(1) (https://www.law.cornell.edu/uscode/text/28/1292) to clarify consumer rights under the Telecommunications Act, ensuring an appeal-ready record for the Ninth Circuit.

7. Notify the FCC, DOJ, SEC, California Attorney General, and California Public Utilities Commission of T-Mobile's violations for potential investigation, given their systemic harm to consumers (Exhibit A, p. 4, line 10, Dkt. 5; FCC Emails, Dkt. 24, attached).

8. Grant such other relief as the Court deems just and proper, in light of my pro se status and the public interest (Haines v. Kerner, 404 U.S. 519, 520).

## CERTIFICATE OF SERVICE

I, Mario Juarez, certify that on July 6, 2025, I served this Supplemental Brief on Defendant T-Mobile USA, Inc.'s counsel, Lynn R. Fiorentino (lynn.fiorentino@afslaw.com) and Lawrence H. Heftman (lawrence.heftman@afslaw.com), via CM/ECF and email, pursuant to FRCP 5(b)(2)(E) (https://www.law.cornell.edu/rules/frcp/rule_5) and Local Rule 5-2 (https://www.cand.uscourts.gov/rules/civil-local-rules/5-service-and-filing-of-pleadings-and-other-papers/).

/s/ Mario Juarez

**Dated**: July 6, 2025
/s/ Mario Juarez
Mario Juarez, Pro Se
66 Franklin St, Suite 300, Oakland, CA 94607
mario@mariojuarez.co

Executed in Torreon, Coahuila, Mexico

Plaintiff resides in Oakland, CA, with business operations at 66 Franklin St, Suite 300, Oakland, CA 94607, and in Tijuana, Baja California, Mexico (Declaration of Mario Juarez, Dkt. 22).